, BACON *v.* RIVES.

1. Where the complainants are citizens of the State in a court whereof the suit was brought, and the defendant, who is the real party to the controversy, and against whom relief is sought, is a citizen of another State, his right to remove the suit to the Circuit Court of the United States cannnot be defeated upon the ground that the citizenship of another defendant who is a stranger to that controversy, and who occupies substantially the position of a mere garnishee, is the same as that of the complainants.

2. A suit upon a contract made and to be performed in another State or country, by a person who then resided there, cannot be maintained in Virginia, after the right of action thereon is barred by the laws of such State or country.

3. In the latter part of the year 1863, at the instance of A., then a resident of Texas, B., a resident of Virginia, forwarded to him money in trust to invest, pursuant to specific instructions.  A., in 1865, reported that he had invested the fund in the transportation of cotton, but did not state what profits had accrued therefrom.  No further report was made by him.  In 1875, B., on discovering where A. was, filed a bill against him to compel a discovery and an accounting, which, upon demurrer, was dismissed upon the ground that the suit was barred by the Statute of Limitations of both States. *Held,* that in view of the case made by the bill, and of the subsisting trust, the existence of which is admitted by the demurrer, B. is entitled to a discovery of the disposition made of the money, and that the limitation does not commence running until the trust is closed, or until A., with the knowledge of B., disavowed the trust or held adversely to his claim.

APPEAL from the Circuit Court of the United States for the Western District of Virginia.

The case is stated in the opinion of the court.

*Mr. William S. Royall* and *Mr. Joseph Bryan* for the appellants.

*Mr. Egbert R. Watson* for the appellees.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is a suit in equity. The complainants are John L. Bacon and H. E. C. Baskerville, partners as Bacon & Baskerville; John Stewart, Robert Ould, Robert H. Maury, and Isaac H. Carrington, trustees for the benefit of the creditors of William H. Macfarland, deceased, by virtue of a deed dated Oct. 20, 1870; John W. Wright, sheriff of the city of Richmond, and, as such, administrator of said Macfarland, — all citizens of Virginia.

The defendants are George C. Rives, a citizen of Texas, in his own right and as administrator with the will annexed of George Rives, deceased; J. Henry Rives, a citizen of Virginia, executor of George Rives, deceased; and Alfred L. Rives, a citizen of Alabama, executor of William C. Rives, deceased.

The suit was commenced, on the 22d of July, 1875, in the Circuit Court of Albemarle County, Virginia, and was thence removed into the Circuit Court of the United States for the Western District of Virginia, upon the petition of George C. Rives, in which the defendant, Alfred L. Rives, executor of Williams C. Rives, united. In the latter court, a demurrer to the bill was interposed by George C. Rives, upon the ground that the suit was barred by the Statute of Limitations both of Texas and Virginia. The demurrer was sustained, and the bill dismissed. The complainants thereupon appealed.

The case made by the bill is, substantially, as follows: —

In the summer of the year 1863, Bacon & Baskerville, John Stewart, Robert H. Maury, William H. Macfarland, and William C. Rives, uncle of the defendant George C. Rives, sent $131,000 in " Confederate States treasury notes " — the currency, at that time, of Virginia, Louisiana, and Texas — to James H. Stevens, then in Monroe, La., with instructions to invest or expend the same in the purchase of cotton on plantations in Louisiana and Texas, to remain thereon until the civil war was ended. Of that sum Bacon & Baskerville owned $48,000, Stewart $48,000, Maury $10,000, Macfarland $5,000, and William C. Rives $20,000. Subsequently, however, Bacon & Baskerville became the owner of $80,000, and Stewart of $16,000, the interest of the other parties in the residue remaining the same as at the outset. The funds were

sent to Stevens by Bacon & Baskerville, by whom all instructions were given and negotiations conducted. The proceeds of the investment, it was understood, were to be divided among the parties in proportion to their respective interests.

About the 3d of September, 1863, Stevens died in Louisiana, en route to Texas, without having invested any of the funds. Shortly thereafter the complainants were notified by his widow that she held the $131,000 subject to their order. The defendant, George C. Rives, wrote to the same effect to his cousin, Alfred L. Rives, son and executor of William C. Rives. Moved by the advice and solicitation of William C. Rives, as well as by the encouraging character of certain letters written by George C. Rives to Alfred L. Rives, and exhibited to complainants, and influenced especially by the declaration of the former in his letter, that if the money was turned over to him he would act for the parties under their instructions, and save it by investing it in city property in Austin, Texas, or in property which he represented would pay well, and could be readily sold at any time, the complainants made and appointed George C. Rives their agent in the room and stead of Stevens. They consequently ordered and directed the funds in the hands of Mrs. Stevens to be paid to him, and towards the close of the year 1863, or early in 1864, he received them as agent and for the benefit of the complainants, to be invested in conformity with specific instructions given by Bacon & Baskerville, the managers and business negotiators of the enterprise, with the concurrence of the joint owners of the funds, viz.: 1. To invest them in cotton on plantations in Texas, to remain thereon until the war ended, that being the first and chief object of the whole venture. 2. If that could not be done, then to invest them in ranch property, meaning lands in Texas with cattle and horses thereon. 3. If that could not be done, then to invest them in town lots in Austin.

Nothing was heard from George C. Rives upon the subject of the proposed investment until, in response to a letter from Bacon & Baskerville, under date of Jan. 27, 1865, he wrote, under date of April 5, following, that he had invested the funds in the transportation of cotton under articles of partnership to continue during the war, and that the business was

under the management of an active partner, who gave his whole time and attention to it; but he did not state who the active partner was, nor how much of the funds he had so invested, nor what property he had purchased therewith, nor what proceeds, if any, had accrued from the investment. His departures from the instructions were not approved by the complainants, and they hoped, notwithstanding their orders had been disregarded, that a fair and honest return would be made by him. After the war ended, and after the expiration of eighteen months without any report or statement from him, Bacon & Baskerville, in November, 1866, wrote to him at Austin, Texas, asking an account of his agency, to which letter no reply was made. On the 26th of January, 1867, they again wrote to him at Austin, asking such account; but no reply to that letter was received. Complainants, consequently, " almost reached the conclusion that Rives had either died or left the country." But in March, 1875, learning accidentally that he was not only living, but for several years then past had visited Virginia each summer, they again wrote to him asking an account of his agency. No reply came to that letter. At the same time they wrote, as they had before done, to Alfred L. Rives, asking information as to George C. Rives; but no reply was received, nor were the letters written to the latter ever returned to the writers through the dead-letter office.

As soon as possible after learning the whereabouts of George C. Rives, the complainants instituted this suit, charging that his retention of the whole proceeds of the money intrusted to him, his silence for nearly ten years, and his failure to render any account, arose from an intention to defraud them out of it, or the proceeds of its investment.

The bill further shows that George Rives died in Virginia in 1874, possessed of a large estate, real and personal, in which, by his will, George C. Rives, his son, had a large interest, and that J. Henry Rives and Charles Edward Rives qualified as his executors. The complainants ask that the interest of George C. Rives in that estate, in whatever form, be attached in the hands of the executors to pay whatever may be shown to be due them. Attachments were served upon the executors, and levied upon that interest. It is also

averred that William C. Rives has died, and that Alfred L. Rives is his executor; that Macfarland died in 1873, having executed, on the 29th of October, 1870, a deed conveying all his property of every kind, in possession or in action, to Robert Ould and Isaac H. Carrington, trustees for the benefit of his creditors; and as no administration was had upon his estate, the same was committed to the defendant Wright, sheriff of the city of Richmond. It may be stated in this connection that, after the cause was removed from the State court, Charles Edward Rives, an original defendant, died, and George C. Rives became administrator *de bonis non* with the will annexed of George Rives.

The bill prays that the defendants be required to make, upon oath, full, true, and complete answers to all the allegations of the bill; and that George C. Rives be required to render a full and complete account of all his actings and doings as agent of complainants, and show what disposition or investment he made of the funds intrusted to him, and what were the proceeds of such investment; and if no investment was made according to instructions, nor any other investment of which complainants may choose to avail themselves, that he be required to pay the value of the funds intrusted to him as agent, with lawful interest thereon.

Without waiving a full answer under oath to the bill, the complainants ask that George C. Rives be required to answer the several special interrogatories embodied therein, the object of which is to obtain from him information as to whether he had received the $131,000 under an engagement, as agent, to invest it in the mode set out in the bill; whether he had so invested it or not, — if not, why not; if yes, in what kind of property he had invested, and what disposition had been made of it or of its proceeds; and whether, after the close of the war, he did not have in his possession property purchased, in whole or in part, with the proceeds of the investment; if so, of what did it consist, and what has been done with it.

There was also a prayer for such other and further relief as equity and justice required. Thus stood the suit when removed from the State court.

J. Henry Rives, a citizen of Virginia, having been made a defendant, in his capacity as one of the executors of George Rives, it is contended that the suit was not removable into the Circuit Court of the United States. This position cannot be successfully maintained. Without giving all of the reasons which may be assigned in support of the right of removal, it is sufficient to say that he and Charles Edward Rives, executors of George Rives, had no interest in the question whether the complainants have or not a cause of action against George C. Rives on account of the matters set out in the pleadings. They were neither necessary nor indispensable parties to the issue between the complainants and the principal defendant. It was of no moment to them whether the one or the other side in that controversy succeeded. It is true that the attachment which the complainants, before the removal of the suit, sued out against George C. Rives was served upon the executors, and levied upon his interest in the estate of his father. But they were made defendants, not because of any connection they had with the main controversy, but to the end that his interest in that estate might be reached and held, subject to such final decree as the complainants might obtain against him. Though made, formally, defendants, they occupied, substantially, the position of mere garnishees. Their citizenship was, consequently, immaterial. The necessary parties, on the respective sides of the controversy which is the foundation of the litigation, being citizens of different States, the relation of the executors to the suit was properly regarded as merely incidental, arising from the necessity of preserving the means whereby the complainants might, if successful in this suit, obtain satisfaction of their demands against George C. Rives.

The remaining question to be considered relates to the defence of the Statute of Limitations presented by the demurrer to the bill. The contention of the defendant is that the cause of action, if any, existed as far back as the close of the late civil war; that in Virginia and Texas the running of limitation was suspended by statute, in the former from some time in April, 1861, until Jan. 1, 1869, and in the latter from some time in 1861 until March 30, 1870; that by the laws of Texas two years was the limitation to suits on oral, and four years to

suits on written contracts, while the limitation in Virginia to such suits as the present one was five years; consequently, excluding from the computation of time the periods of the suspension of the statute in the respective States, the plaintiffs' cause of action was barred. The defendant further insists that the law of Texas governs by reason of that provision in the code of Virginia which declares that "upon a contract which was made and was to be performed in another State or country, by a person who then resided therein, no action shall be maintained after the right of action thereon is barred by the laws of such State or country." Code of Va., edit. 1873, sect. 20, p. 1002.

In the view which the court takes of the case it is unnecessary now to determine whether reference must be had to the law of the State where the suit is pending, or to that of the State where the alleged contract was to be performed. We are not satisfied that the cause of action, as set out in the bill, was, at the commencement of the suit, barred by limitation as prescribed in either Texas or Virginia. The case, as now presented, discloses — not, perhaps, one of those technical trusts of which a court of equity has peculiar and exclusive jurisdiction, but yet — a trust, arising out of express agreement, under which the defendant, George C. Rives, received from the complainants certain funds, which he undertook to invest in particular kinds of property, in conformity with specific instructions given by those whom he represented. His duty, under the law, although the agreement did not in terms so declare, was, from time to time, as the circumstances required, to inform those whom he represented of his acts, and, upon completion of the trust, to render an account of all he had done in the premises; or, if he elected not to execute the trust, to surrender the property or its proceeds. He received the funds, as has been seen, in the latter part of the year 1863, or early in 1864. He undertook to invest them, if practicable, in cotton on plantations in Texas, to remain thereon until the civil war was concluded. Failing in that he was to invest in ranch property, or lands in Texas, with cattle and horses thereon; failing in the latter, he was to invest in town lots in Austin, in that State. He gave, so the bill avers, no informa-

tion whatever of his acts until the spring of 1865, when, in response to a letter from his principals, he wrote that he had invested the funds received by him in the transportation of cotton, under articles of copartnership to continue during the war, and that the business was under the management of an active partner, who gave his whole time and attention to it. Whether that arrangement involved a violation of the laws of the United States in reference to the shipment of cotton from the insurrectionary districts, does not now appear. But he withheld the name of that partner, and did not inform his principals of the result of that investment. From that time forward the defendant failed to communicate with the complainants, or any of them, as to what, if anything, had been accomplished in the execution of his trust. To letters making inquiries, and which, in the present attitude of the case, we may assume were received, no response was made.

Taking, then, the allegations of the bill to be true, as upon demurrer we must do, the existence of the trust is clearly established; it is still open, or not wholly executed; it has never been disclaimed by clear and unequivocal acts or words, brought to the notice or knowledge of the complainants or either of them; there has been no adverse holding of the original fund or of its proceeds; consequently, the possession by the defendant, George C. Rives, of the proceeds of the original fund, if invested at all, may be deemed the possession of those whom he undertook to represent. But it is suggested that while the agreement did not prescribe any period within which he was to make the investment, it was necessarily implied that it was to be performed within a reasonable time; consequently, it is argued, the statute would commence running after the lapse of such reasonable time, or from the moment when complainants were entitled to enforce an accounting. *Phillips* v. *Holman*, 26 Tex. 276. To this it may be replied that whether the trustee was derelict in duty in not making the investment within any particular period, depends upon the special facts of the case. Having regard to all the circumstances, particularly such as were connected with the disturbed condition of the country for many years after the war closed, we cannot, upon the case made by the bill, fix the date when the defendant

should, with reasonable diligence, have executed his trust, or say that there has been, upon the part of complainants, such delay as prevents them from applying to a court of equity for relief. Being called upon to execute what, consistently with the facts, as disclosed in the bill, appears to be a subsisting trust, or if it has been, in whole or in part, executed, to disclose when and how it was so executed, he should not be permitted to take shelter behind a demurrer, which relies simply upon the statutory limitation and confesses that he has kept his *cestuis que trust* in ignorance of what it was his duty to communicate. The complainants, it seems to the court, are entitled, upon well-established principles of equity, to a discovery as to the disposition, if any, which has been made of their property. Inquiry in that direction should not be cut off, since, upon the showing made, it does not clearly appear that the suit is barred by the Statute of Limitations. Unless otherwise distinctly declared by the statute prescribing fixed periods for the commencement of suits, the cause of action is not, ordinarily, deemed to have accrued against, nor limitation to commence running in favor of, the trustee of such a trust, as the bill describes, until the trust is closed, or until the trustee, with the knowledge of the *cestuis que trust*, disavows the trust, or holds adversely to their claim.

And such seems to be the doctrine of the Supreme Court of Texas, by the laws of which State, the defendants insist, this case is to be determined as to the question of limitation. *White* v. *Leavitt*, 20 Tex. 703; *Grumbles* v. *Grumbles*, 17 id. 472. In the first of these cases a recovery was sought by the plaintiff for the recovery of the value of certain goods consigned for sale to the defendants therein, and which had never been accounted for. The suit was not commenced until four years after the goods came to the hands of the consignees for sale. It was said by the court: "The proof shows that the goods were held and disposed of by White & Co. in trust for Leavitt, and there being no evidence that the trust was ever repudiated, the Statute of Limitations [two years] did not run upon the cause of action, as it has often been decided by this court."

It is also suggested that the bill concedes that the complainants were informed by defendant in the year 1865 that

he had invested the funds placed in his hands in a way not authorized by the instructions given him, and consequently, it is argued, the complainants had then a cause of action to recover such damages as they had sustained by reason of the disregard of their instructions. It may be that, upon final hearing, when the facts are fully disclosed, the court may be bound to hold the complainants estopped to complain of his departure from the instructions under which he received the funds in question. Even then, so far as can be now determined from the allegations in the bill, he would be liable to account for the proceeds, if any, of his investment "in the transportation of cotton under articles of partnership," in the same way that he would be required to account for the proceeds of investments made in conformity to his instructions. It does not appear from the bill that the defendant intended, by investing in the particular mode stated in his letter, to assume a position of hostility to his principals, or to hold the proceeds, if any, of that investment, in his own right.

As, therefore, it does not clearly or distinctly appear from the bill that the suit was barred by limitation, the demurrer should have been overruled. The facts, when fully developed, may present an altogether different case from that now disclosed. We can only consider the question of limitation in the light of the facts alleged in the bill.

*Decree reversed, and cause remanded for further proceedings in conformity with this opinion.*

This case was argued at the last term, before MR. JUSTICE BLATCHFORD came upon the bench, and he took no part in deciding it.