### MACURDA v. GLOBE NEWSPAPER CO. et al.

(Circuit Court, D. Maine. November 19, 1908.)

No. 82.

1. GARNISHMENT (§ 4*) — ACTIONS IN WHICH GARNISHMENT IS AUTHORIZED — MAINE STATUTE—"SLANDER BY WRITING OR SPEAKING."

In Rev. St. Me. 1903, c. 88, § 1, which provides that "all personal actions except those of detinue, replevin, actions on the case for malicious prosecution, for slander by writing or speaking and for assault and battery may be commenced by trustee process," the words "slander by writing or speaking" are used in a comprehensive sense and include libel, and under such provision an action for libel cannot be commenced by trustee process.

[Ed. Note.—For other cases, see Garnishment, Dec. Dig. § 4.*].

2. GARNISHMENT (§ 84*)—JURISDICTION—WAIVER OF OBJECTION.

Where an action for libel against a foreign corporation was commenced in Maine by trustee process in violation of the state statute, the giving of a bond by the defendant to release the garnishees was not a waiver of its right to object to the jurisdiction of the court.

[Ed. Note.—For other cases, see Garnishment, Dec. Dig. § 84.*]·

3. REMOVAL OF CAUSES (§ 31*)—DIVERSITY OF CITIZENSHIP—PARTIES.

Under the rule of the federal courts as affecting the right of removal on the ground of diversity of citizenship, garnishees are not indispensable parties.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 71; Dec. Dig. § 31.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On Motion to Dismiss for Want of Jurisdiction.

Arthur S. Littlefield, for plaintiff.

Symonds, Snow, Cook & Hutchinson, for defendants.

HALE, District Judge. This case comes before the court on defendant's motion to dismiss the plaintiff's writ and action for want of jurisdiction. The record, to which the motion is addressed, shows the facts to be as stated by the defendant. The motion clearly defines the precise question at issue, and is as follows:

"And now comes the Globe Newspaper Company, defendant in the above-entitled action, and respectfully represents to the court that it is a foreign corporation, organized and existing under the laws of the state of Massachusetts, and having its location and principal place of business at Boston in said state, and an inhabitant of said state of Massachusetts; that as such corporation it holds no charter from the state of Maine, and has, and had at the date of the writ in this action and the service thereof, no property therein subject to attachment; that the writ in said action is a writ of foreign attachment, generally known under the statutes of the state of Maine as a trustee process: that upon said writ there was no service upon the defendant corporation, and no attachment of property, within the state of Maine; that by said writ certain persons alleged to be trustees of the defendant corporation, and as such to have in their possession funds belonging to it, were summoned as alleged trustees of the said defendant company; that the summoning of said alleged trustee, and the attachment by said trustee process of funds of the defendant company alleged to be in the hands of said trustees, are the only grounds on which the jurisdiction of the state court, or of this court, over the defendant company can be claimed; the defendant company further respectfully alleges that by the statutes of the state of Maine (Rev. St. 1903, c. 88, § 1) it is provided that 'All personal actions, except those of detinue, replevin, actions on the case for malicious prosecution, for slander by writing or speaking, and for assault and battery, may be commenced by trustee process in the supreme, judicial or superior courts.' It is further provided by the Revised Statutes of the state of Maine (chapter 1, § 6, par. 20) that 'the words "in writing" and "written" include printing and other modes of making legible words.' The defendant corporation further respectfully represents to the court that the above-entitled action is an action on the case for slander by writing; that there is no authority under the statutes of the state of Maine for issuing a trustee process in such case, and that the attachment claimed of funds alleged to be in the hands of persons named as alleged trustees is wholly void, and therefore that the state Supreme Court and this court is wholly without jurisdiction of the defendant corporation in said process, the same having been issued, and the alleged foreign attachments thereon having been made, irregularly and without authority of law. For these reasons, all of which are apparent of record in the above-entitled action, the defendant corporation respectfully moves the court that the same be dismissed from the docket."

1. Does the statute of Maine (Rev. St. c. 88, § 1) prohibit commencing an action for libel by trustee process? The statute has been recited in the foregoing motion. Its language conveys a clear prohibition against commencing by trustee process an action for "slander by writing or speaking." But the learned counsel for the plaintiff contends that an action for libel is not necessarily or technically an action "for slander by writing." He urges that, under the rules of construction laid down by the Maine statute (chapter 1, Rev. St. Me.), "technical words and phrases, and such as have a peculiar meaning, convey such technical or peculiar meaning"; that each of the words "libel" and "slander" has a technical and distinct meaning; that, in construing

them, the court should give each its strict technical meaning, in order to make sense, and in order to find the exact intention of the Legislature; that the history of the statute in question requires that the word "slander" should have its ordinary meaning of oral defamation; that the original statute in chapter 61, p. 286, of the Laws of 1821, provides that the process of foreign attachment may be used by any party entitled to personal action, except in cases, among others, of "actions on the case for slanderous words"; that the words "slander by writing or speaking" first appear and take the place of the phrase "slanderous words" in the Revised Statutes of 1841 (chapter 119, § 1); that this change was made by the revisers without any special act of amendment. He sharply outlines his further contention as follows:

"Under a familiar rule of construction, it is not to be presumed, therefore, that the Legislature intended to change the section any further than it is absolutely necessary it should be held to be changed by the change in language. The fact that no specific amendment of the original section was ever made leads to the same conclusion as the rule of construction requiring the word 'slander' to be construed in its technical sense. Is there any necessity for construing it otherwise? We submit there is not; and in reaching this conclusion we are not required to repudiate the force of the word 'writing.' 'Slander' or 'slanderous words,' without modification, is understood in its technical sense as oral defamation of a person in such language as gives a right of action. There is, however, a technical slander which may be written. That is slander of property or title. In such 'slander' it makes no difference whether the defendant's words be spoken or written or printed."

Was it, then, the intention of the Legislature to include the action for libel in the prohibition against commencing by trustee process an action "for slander by writing or speaking"? There is no case in the state of Maine which expressly decides the question. The learned counsel for defendant points out that the history of legislation in Maine is precisely the same as the history of legislation in Massachusetts; that the Massachusetts act of 1794 (chapter 65, p. 121, § 1) provided:

"That any person or persons, body politic or corporate, entitled to any personal action, excepting detinue replevin actions on the case for slanderous words or malicious prosecutions, or actions of trespass for assault and battery"—

may be summoned as trustee by use of the trustee process; that the phrase "slanderous words" was in Massachusetts changed in the revision of 1836 (Rev. St. 1836, c. 109, § 1) to "slander, either by writing or speaking," without any new legislation except by force of the revision; that our revision of 1841 leaves the law practically the same as the Massachusetts Legislature left it by the revision of 1836; that therefore the exception in the statutes in both states had been originally of actions on the case for "slanderous words"; that, without any new act, the new phrase was adopted in the revision of 1836 in Massachusetts, and in the revision of 1841 in Maine; that it is evident that in 1841 the Legislature of Maine followed the latest revision in Massachusetts; that the court in Massachusetts has construed the Massachusetts statute in McDonald v. Green, 176 Mass. 113, 57 N. E. 211. In that case, the defendant moved to dismiss, on the ground that the action had been improperly brought by trustee process, such action

being forbidden by the Massachusetts statute, and not authorized by common law. In speaking for the court, Judge Barker said:

"The provision of Pub. St. 1882, c. 183, § 1, forbidding actions of tort for slander to be commenced by trustee process, is in the same part of the statutes with Pub. St. c. 167, § 1, and includes all actions of tort in which the wrong complained of is in the writing or speaking of words designed to injure the defendant in his property, as well as those defamatory of his person or reputation. All such actions are well known and well described as actions of tort for slander."

In that case, the slander which was before the court was "slander of title."

In coming to a conclusion as to the intention of the Maine Legislature in making the change from "slanderous words" to "slander by writing or speaking," it is interesting to observe the language of the law writers of a century or more ago on the subject of libel and slander. Bacon's Abridgement has this definition:

"Slander is the publishing of words in writing or by speaking; by reason of which the person to whom they relate becomes liable to suffer some corporal punishment, or to sustain some damage.   *   *   *"

Bacon's Abridgement, in defining libel, says:

"Words, though not slanderous in themselves, yet if published in writing, tending in any way to the discredit of a man, are libel."

Bouvier thus defines slander:

"Slander is the malicious publication of words by speaking, writing or printing, by reason of which the persons to whom they relate become liable to suffer corporal punishment or to sustain some damage."

Bouvier further says:

"The reduction of a slanderous matter to writing or printing is the most usual mode of conveying it."

Rapalje has this later definition:

"Libel is a published writing, picture or similar production of such a nature as to immediately tend to do mischief to a party, or injure the character of an individual. Slander of title is a false and malicious statement, whether by word of mouth or in writing, in reference to a person's title to some right or property belonging to him, as where a person alleges that the plaintiff has a defective title to land. A written slander of title is sometimes called a libel in the nature of slander of title."

It seems, then, that the well-known authorities in the common law of the last century used "slander" as the more general term, and sometimes included "libel" in the general designation of "slander" or "slanderous words."

A further examination of the language of some of the writers on the common law shows that the phrase "slanderous words" was sometimes made to apply to spoken words, and sometimes to words either spoken or written. It seems to have generally been assumed that slander may be spoken or written, and that when written it becomes libel. I think the Legislatures of Maine and Massachusetts, in their original statutes, and in the subsequent revisions, used language with very much the same meaning as that employed by the law writers of a century ago. I can find nothing that induces me to believe that it

was the intention of the Maine statute to include only "slander of title" in the words "slander by writing," and to exclude all other forms of "written slander." The Maine statute of construction provides that technical words and phrases shall be given their technical or peculiar meaning; but it does not provide that they shall receive a strained or artificial meaning. I cannot escape the conclusion that the Legislature of Maine, both in the original use of the phrase "slanderous words" and in the later use of the words "slander by writing or speaking," intended to include libel; that it used the words of the revision of 1841 in order to make the law more distinct and clear; and that, in that revision, and in the present statute, it was the intention of the Legislature to prohibit the beginning of an action for libel by trustee process. In my opinion, therefore, the present provision of the Legislature prohibits commencing an action for libel by trustee process.

2. The plaintiff further contends that the defendant waived any objection which it might otherwise have had to the form of the writ by reason of the fact that it gave a bond to the plaintiff to pay whatever judgment should be rendered in the case; and that thereupon the attachment of funds in the hands of the alleged trustee was discharged. I have already stated my conclusion that the statute in question prohibits the commencement of an action for libel by trustee process. The plaintiff's action, then, is void and unlawful; the process is of no force or effect. It cannot be held that the bringing of the action is merely voidable, and that one of the parties is entitled to the option to treat it as legal or illegal. The plaintiff's action having been void and unlawful, the court has acquired no jurisdiction. And it cannot be given jurisdiction by anything which the defendant can do. By charging or discharging the garnishees, the parties could not eliminate them, and make the action over from an action by trustee process into an ordinary common-law action by writ of attachment. It cannot, therefore, be held that, by giving a bond to relieve funds from temporary restraint, the defendant can waive his right to be heard in court to say that the action is brought in violation of the law, and that the court has no jurisdiction. In answer to this contention, it is sufficient, then, to say that the action is void and illegal in the beginning, and not merely voidable; that the defendant did not waive the illegality of the action, and could not do so. It could not give jurisdiction to a court which had no jurisdiction to entertain a void and unlawful action.

3. The plaintiff urges that, even though commencing an action for libel by trustee process is prohibited by the Maine statutes, and even though there has been no waiver by the defendant, still, in any event, the action should not be dismissed, but should be remanded to the state court, for the reason that the garnishees are indispensable parties to the controversy, and some of them are residents of the same state with the plaintiff. And the plaintiff has accordingly moved that the action be remanded to the state court, from whence it was removed. This contention of the plaintiff cannot be sustained. Whatever may have been held by state courts in respect to garnishees being, for certain purposes, parties to an action, it is the rule of the federal courts, in matter of removal of causes for diversity of citizenship, that garnish-

ces are not indispensable parties to a suit. Moon on Removal of Causes, § 132, and cases cited; Cook v. Whitney, 3 Woods, 715, Fed. Cas. No. 3,166; Bacon v. Rives, 106 U. S. 99, 1 Sup. Ct. 3, 27 L. Ed. 69. The federal courts in this circuit have acted consistently with this rule, although I do not find that cases in this circuit have come into judicial literature.

The writ and action must be dismissed.