DIXIE FIRE INSURANCE COMPANY v. AMERICAN BONDING COMPANY.

(Filed 28 May, 1913.)

1. Issues Submitted—Issues Tendered.

There is no reversible error in refusing issues tendered by a party litigant, if those submitted present every phase of the controversy and permit every possible contention.

**2. Contracts—Indemnity Bonds—Acceptance—Lex Loci Contractus.**

Where a foreign corporation has issued a bond indemnifying a North Carolina concern against loss under a contract with an agency, located in another State, established to collect moneys, etc., as in this case, for insurance premiums, which bond was delivered to the agent to be sent to the indemnified here for approval and acceptance, the contract of indemnity is to be construed and enforced in accordance with our own laws.

**3. Principal and Agent—Embezzlement.**

Where an agent intrusted by the principal to collect moneys has fraudulently and feloniously converted moneys thus collected to his own use, he is guilty of embezzlement.

**4. Principal and Agent—Surety — Indemnity Bond — Notice of Default—Reasonable Notice.**

Where a contract of indemnity only provides that the indemnified give immediate notice of the default of an agent in accounting for moneys, for which the indemnifying company is liable under its bond, a failure of strict compliance in giving the notice will not always prevent a recovery, the provision not being in the form of a condition, or an express warranty.

**5. Same—Questions of Law—Notice Sufficient.**

The plaintiff sues the defendant on its bond indemnifying against loss by reason of an agent's defalcation in failing to account for moneys collected, wherein it was provided that immediate notice be given the indemnifying company of such default. It was not disputed that this notice was given five days after the knowledge thereof of the plaintiff: *Held*, the reasonableness of the notice is a question of law, and the time thereof in this case is sufficient.

**6. Same—Interpretation of Contract—Expressio Unius.**

Where an indemnifying bond requires immediate notice of the default indemnified against, but does not make the failure to give this notice a ground of forfeiture, as expressed in relation to other and different requirements therein, the maxim *expressio unius est exclusio alterius* applies, and a reasonable notice will be sufficient for enforcing the bond.

**7. Principal and Surety—Indemnity Bond—Limitations of Actions—Interpretation of Statutes.**

Suits upon an employee's indemnity bond are regulated by Revisal, sec. 4809, forbidding the time for bringing suits on contracts of this character to less than one year; and a provision therein is void which required that no suits "or proceedings at

162—25

law or in equity shall be brought against the surety after the expiration of six months from the end of the time during which, under the terms of this bond, the employer's claim may be filed with the surety."

8. **Principal and Surety—Indemnity Bonds—Judgment Against Principal—Prima Facie Case—Rebuttal Evidence—Defenses—Interpretation of Statutes.**

In an independent action against a surety on its indemnity bond, a judgment against the principal is *prima facie* evidence of the sum or amount which the surety is thereon obligated to pay, although the surety is not a party, which the surety may impeach for fraud, collusion, or mistake, or he may also set up an independent defense. Revisal, sec. 285, has no application.

9. **Principal and Agent—Surety—Declarations of Agent—Evidence.**

In an independent action against a surety on a bond indemnifying against an agent's default, the declarations of the agent, the principal on the bonds, are incompetent.

10. **Principal and Surety—Judgments—Prima Facie Case—Instructions—Admissions—Appeal and Error.**

The judgment against the principal on an indemnity bond being only *prima facie* evidence of the amount due by the surety for his alleged default thereunder, an instruction in this case is held for reversible error, that there was no controversy about the fact that this principal had defaulted in a certain sum, no such admission appearing, and the issue being contested.

APPEAL by defendant from *Peebles, J.,* at January Term, 1912, of GUILFORD.

Civil action, tried upon these issues:

1. Did the defendant L. S. MacEnaney, while acting as general agent of the plaintiff, collect and receive as such agent for and on behalf of the plaintiff the sum of $5,007.21 between the first day of February, 1909, and the first day of February, 1910, and fraudulently convert the same to his own use, as alleged in the complaint? Answer: Yes.

2. Was the defendant L. S. MacEnaney guilty of larceny or embezzlement under the laws of the State of Illinois by reason of the acts and things alleged in the complaint? Answer: No.

3. Is the plaintiff's cause of action barred by the statute of limitations? Answer: No.

4. What amount, if any, is the plaintiff entitled to recover of the American Bonding Company of Baltimore on account of its general fidelity bond herein sued upon; executed and delivered to the plaintiff on 24 April, 1909? Answer: $5,007.21, and interest from 4 March, 1910.

From the judgment rendered the defendant American Bonding Company appealed.

*A. L. Brooks and Sapp & Hall for plaintiffs.*
*Alfred S. Wyllie and Thomas J. Shaw for defendant.*

BROWN, J. The facts, briefly stated, are that on 23 April, 1909, L. S. MacEnaney, a resident of the city of Chicago, entered into an agreement with the Dixie Fire Insurance Company of Greensboro, N. C., whereby he became the general agent for said company in the States of Illinois and Indiana for the purpose of writing and effecting fire insurance and collecting premiums and remitting same to the Dixie Fire Insurance Company at its home office in the city of Greensboro. In said written contract of agency it was provided that the agent MacEnaney furnish to the Dixie Fire Insurance Company a bond in the sum of $10,000 in some guaranty company acceptable to the said Dixie Fire Insurance Company for the faithful performance of his duties under the contract. McEnaney applied to the American Bonding Company of Baltimore for a fidelity bond, and the same was executed by said bonding company and delivered to MacEnaney to be transmitted to the Dixie Fire Insurance Company, at its home office in the city of Greensboro, for its approval, which said bond the Dixie received, inspected, and approved. The bond covered a period from 1 February, 1909, to 1 February, 1910, and provided, among other things, "that if the employee shall in the position of general agent in the employer's service make good to the employer within thirty days any loss sustained to the employer by larceny or embezzlement committed by the employee during the term commencing on 1 February, 1909, at 12 o'clock, noon, and ending on 1 February, 1910, at 12 o'clock, noon, this obligation shall be null and void; otherwise, in full force and effect."

This action is brought to recover for a breach of the bond. We will not consider *seriatim* the thirty-five assignments of error, but only such as we regard as pertinent in determining the real points of controversy.

1. There is no merit in the exception to the issues. Those submitted embrace the controverted facts set out in the pleadings, and under them the defendant had opportunity to make every possible defense. *McCall v. Galloway, ante,* 353; Clark's Code, sec. 391.

2. The indemnity bond is a contract solvable in North Carolina and is to be construed and enforced under the laws of that State. The bond was a species of indemnity insurance in which the plaintiff was the beneficiary, taken out for its benefit and not for the benefit of its agency. It may have been taken out by MacEnaney in Chicago, but it was intended by defendant that it should be transmitted and delivered to plaintiff at its general offices in Greensboro, North Carolina.

It is provided in the written contract creating MacEnaney an agent of the Dixie Fire Insurance Company, that MacEnaney shall furnish a general fidelity bond satisfactory to the company, and the evidence is undisputed that MacEnaney obtained the bond from defendant and sent it to the Dixe Fire Insurance Company, at its home office in the city of Greensboro, where and when it approved and accepted same.

This State is, therefore, the *locus pro solutione* and the *locus celebrationis* of the contract. *Pritchard v. Norton,* 106 U. S., 104; *Bell v. Packard,* 31 Am. Rep., 251; *Dickerson v. Edwards,* 33 Am. Rep., 671; *American Mortgage Co. v. Jefferson,* 69 Miss., 70; *Scott v. Perlee,* 48 Am. Rep., 421; *Millikan v. Pratt,* 125 Mass., 374; *Hill v. Chase,* 143 Mass., 129; *Bell v. Packard,* 69 Me., 105.

*Millikan v. Pratt, supra,* is a case which we think is directly in point, the facts in this case being that the plaintiff resided in Portland, Maine, and the defendant was the wife of Daniel Pratt and resided with her husband in Massachusetts. He, Daniel Pratt, asked credit of the plaintiffs, and they required a guarantee, which he procured, and had the defendant, his wife, to execute the same at her home in Massachusetts, and

there delivered it to her husband, who sent it by mail from
Massachusetts to the plaintiffs in Portland. The plaintiffs received it from the postoffice in Portland. *Chief Justice Gray,*
in discussing the *locus celebrationis,* used the following language:

"The contract between the defendant and plaintiff was complete when the guarantee had been received and acted upon by
them while at Portland, and not before. It must therefore be
treated as made and to be performed in the State of Maine,"
citing cases to sustain this position.

In Minor on Conflict of Laws, page 372, this rule is laid
down:

"Notes, deeds, and other contracts of that character do not
become completed and binding contracts merely by the fact of
the promisor's signing them. They must also be delivered.
Hence, if the signing occurs in one State, while the delivery
takes place in another, the latter State, not the former, is the
*locus celebrationis.*"

Having concluded that this State is the place where the contract is to be construed and performed according to the plain
intention of the parties, it necessarily follows that it is immaterial to inquire whether under the laws of Illinois a breach
of the bond has been proven.

There is evidence sufficient to be submitted to a jury that
plaintiff's agent, MacEnaney, fraudulently and feloniously
converted to his own use the sum of $5,007.21 of plaintiff's
money, as found by the jury under the first issue. This constituted embezzlement under the law of this State. *S. v. Mac-
Donald,* 133 N. C., 682.

3. The cause of action is not barred for failure to give notice to defendant under section 3 of the contract.

The evidence was undisputed that the first information plaintiff had of the defendant's having collected the amount in controversy for and on behalf of the company, and refused to
make good to it the amount so collected, was on 20 January,
1910, and that on the 25th day of the same month the bonding
company was notified by letter of the default of the agent MacEnaney. The facts being undisputed, it became a question of

law to be passed upon by the court as to whether or not the delay of five days in notifying the bonding company was unreasonable. May on Insurance, sec. 462; Joyce on Insurance, 3229.

In *Building Co. v. Fidelity Co.,* 118 Iowa, 729, reported in 92 N. W., 686, it is held that "a delay of six or eight days in notifying a surety company of an employee's defalcation, where no prejudice resulted, was not as a matter of law a violation of the condition of the bond requiring immediate notice." *Insurance Co. v. Hazen,* 110 Pa., 530.

This provision of the contract stating that the employer shall give the surety immediate notice is not of a character to avoid the entire contract unless performed literally. It is not in the form of a condition or an express warranty, and therefore failure to strictly comply will not always prevent a recovery.

An examination of this bond shows that by its express terms a failure to comply with some of its provisions renders it void. But failure to give immediate notice by telegraph is not expressly made a ground of forfeiture. The maxim *expressio unius est exclusio alterius* applies. Ostrander, sec. 223; *Gerringer v. Insurance Co.,* 133 N. C., 412; *Dixon v. Insurance Co.,* Ins. L. Journal, Dec., 1912, page 1863.

It is declared in Joyce on Insurance, sec. 3282, referred to in this opinion, "If a policy of insurance provides that notice and proofs of loss are to be furnished within a certain time after loss has occurred, but does not impose a forfeiture for failure to furnish them within the time prescribed, and does impose forfeiture for a failure to comply with other provisions of the contract, the insured may, it is held, maintain an action, though he does not furnish proofs within the time designated. *Assurance Co. v. Hanna,* 60 Neb., 29; *Insurance Co. v. Downs,* 80 Ky., 336; *Steele v. Insurance Co.,* 93 Mich., 81.

4. This cause of action is not barred under section 9 of the contract, which provides that "no suit or proceeding at law or in equity shall be brought against the surety after the expiration of six months from the end of the time during which, under the terms of this bond, the employer's claim may be filed with the surety.

As this contract is governed by the laws of this State, it is subject to the statutes of North Carolina. Revisal, sec. 4809, forbidding the time for bringing suit on contracts of this character to less than one year.

This bond contains a clause, "that if the employee shall in the position of general agent in the employer's service make good to the employer within thirty days any loss sustained by the employer by larceny or embezzlement committed by the employee," etc.

The undisputed evidence shows that the first intimation of loss as contemplated by the bond was on 20 January, 1910, and under the terms of said bond the agent, MacEnaney, had thirty days within which to make good to the company, to say nothing of the ninety days allowed the agent to make good under the contract of agency.

The action was commenced 1 February, 1911. His Honor correctly held that the action, according to all the evidence, was not barred by lapse of time before 20 February, 1911.

5. It is contended that the court erred in admitting in evidence the duly certified record of the municipal court of Chicago, a court of record, of the judgment of this plaintiff against the agent, L. S. MacEnaney, for $5,007.21. It must be admitted that the admission of this judgment record in an action against the surety company cannot be justified under our Revisal, 285. We must resort to the precedents, and we admit they are in hopeless discord. In a learned note to the case of *Charles v. Hoskins,* 83 Am. Dec., 380, the annotator, *Judge Freeman,* says:

"The question how far a judgment or decree is conclusive against a surety of a defendant, or against one who is liable over to a defendant, and who was not a party to the action, is involved in the greatest confusion. Between the intimate relations which exist between such a person and the defendant in the suit, on the one side, and the fundamental principle that no one ought to be bound by proceedings to which he was a stranger, on the other, the courts have found it difficult to steer."

It seems that our predecessors in office upon this Bench have intimated, and in one case held, that such judgments, unaided by the statute, are inadmissible in evidence against the surety. *Moore v. Alexander,* 96 N. C., 36.

But an examination of the question has convinced us that the decided trend of modern authority is to the effect that such a judgment against the principal *prima facie* only establishes the sum or amount of the liability against the sureties, although not parties to the action, but the sureties may impeach the judgment for fraud, collusion, or mistake, as well as set up an independent defense. *Charles v. Hoskins,* 83 Am. Dec., 379, and notes. In the notes to this case all the authorities are carefully reviewed.

In that case it is said: "When one is responsible by force of law, or by contract for the faithful performance of the duty of another, a judgment against that other for failure of the performance of such duty, if not collusive, is *prima facie* evidence in a suit against the party so responsible for that other."

6. His Honor erred in admitting the declarations of Mac-Enaney, as the defendant MacEnaney was no party to this action, and if he had been his declarations would be competent only against himself. They were made some time after his agency had been terminated, and were no part of the *res gestæ.*

The general rule is well settled that the admissions of the principal can only be received as evidence against the surety when they are made during the transaction of the business for which the surety is bound so as to become a part of the *res gestæ.* Admissions and declarations made after the employment has ceased are not competent to bind the surety. *Insurance Co. v. Bonding Co.,* 40 L. R. A., N. S., 662, and cases cited.

His Honor further erred in instructing the jury that "there is no controversy about the fact that he converted $5,007.21 of the plaintiff's money to his own use. The only question for you to decide upon is whether he did that with a fraudulent intent." We find no such admission in the record. The judgment of the Chicago court was only *prima facie* evidence of the amount. It remained still a contested issue.

New trial.