## BLYTHEVILLE, L. & A. S. R. CO. v. ST. LOUIS–SAN FRANCISCO RY. CO. et al.

Circuit Court of Appeals, Eighth Circuit.
June 13, 1929.

No. 8300.

R. E. Wiley, of Little Rock, Ark., and H. D. Davis, of Chicago, Ill., for appellant.

E. T. Miller and A. P. Stewart, both of St. Louis, Mo., and E. L. Westbrooke, of Jonesboro, Ark., for appellees.

Before VAN VALKENBURGH and COTTERAL, Circuit Judges, and SCOTT, District Judge.

VAN VALKENBURGH, Circuit Judge. The Blytheville, Leachville & Arkansas Southern Railroad Company, appellant herein, brought suit in the District Court of the United States for the Eastern District of Arkansas against the St. Louis-San Francisco Railway Company and the Jonesboro, Lake City & Eastern Railroad Company, appellees, to enjoin said appellees, defendants below, from canceling and terminating the alleged rights of appellant under a certain trackage agreement under which appellant was operating certain trains upon portions of the right of way of the Jonesboro, Lake City & Eastern Railroad Company, then and now under lease to the St. Louis-San Francisco Railway Company. For convenience, throughout this opinion, as in the briefs of counsel, the appellant will be designated as "Southern," the Jonesboro, Lake City & Eastern Railroad Company as "Eastern," and the St. Louis-San Francisco Railway Company as "Frisco." Upon hearing, a decree on the merits was rendered in favor of appellees and the complaint and action were dismissed for want of equity. However, on application of appellant, it was further ordered and decreed that, pending appeal, the restraining order theretofore issued in favor of appellant should remain in force without prejudice to either party as to the merits involved.

By the trackage agreement in question Eastern granted to Southern, for a period of 10 years from date, the right to operate its freight trains, with its locomotives, cars, crews, and employees, over and upon that part of the main line and side tracks of East-

ern which is between Armorel on the east and Leachville on the west, and over and upon that part of its main line and side tracks which is between Osceola Junction and Keiser, on what is known as the Wilson branch, all as shown on the blueprint attached thereto and made a part thereof.

The only remaining clauses of said contract to which reference need be made are the following:

"Twenty-First. The party of the first part shall have the right to cancel this contract and to terminate all rights of the party of the second part hereunder in the event of a sale or lease of its railroad properties to some other company not owned or controlled by the party of the first part, or in the event of the amalgamation of its railroad properties with some other railroad under any law passed by the Congress of the United States, but such cancellation shall not be made except on twelve months' written notice by the party of the first part to the party of the second part of its intention to cancel, and of the occasion or necessity therefor: Provided, however, that said twelve months notice shall not expire in any event until six months after the contract for such sale or lease has been conclusively accepted or approved by the purchaser, or lessee or the order of amalgamation has been made.

"Twenty-Second. Unless terminated on notice, as hereinbefore provided, the rights and privileges herein granted, together with all other provisions of this contract, shall continue in full force and effect for an additional period of ten years from the date of expiration heretofore mentioned on page 1 of this contract, unless either party shall, at least twelve months prior to said date of expiration, notify the other party in writing that it does not desire the contract to be extended for such additional period.

"Twenty-Third. This agreement shall inure to the benefit of and be binding upon the successors and assigns of the respective parties hereto."

Pursuant to the provisions of paragraph 21, on July 14, 1925, Eastern served a notice in writing on Southern that it desired to cancel the trackage agreement aforesaid "on account of the sale of the Jonesboro, Lake City & Eastern Railroad Company to the St. Louis-San Francisco Railway Company"— the notice reciting that it was desired that the trackage agreement be terminated 12 months from the date thereof. Under date of July 28, 1925, this notice was canceled and withdrawn by Eastern in writing indorsed on a copy theereof redelivered · to

Southern. Thereafter, on August 5, 1925, Eastern wrote Southern requesting Southern to disregard the notice of termination, and adding, "If agreeable to your company, we desire this contract to remain in effect until further notice."

November 5, 1925, Eastern leased to Frisco all of Eastern's line of railroad and other property for a period of 99 years, with privilege of renewal for like periods:

"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and also all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well in law as in equity of the lessor of, in and to the same and every part and parcel thereof, with the appurtenances."

This lease was to take effect on the first day of November, 1925. Concurrently with this lease Frisco acquired all issued and outstanding capital stock of Eastern. Thereafter, Frisco went into full possession of the railroad properties of Eastern and operated the same, and Southern continued its use of the tracks of Eastern under its trackage agreement aforesaid paying to Frisco the agreed train mileage at the rate of $1.25 for each mile, or fraction thereof, for each train that it ran over the said tracks, as in said agreement provided. This use continued until May 14, 1927; on which date Eastern served on Southern a written notice that it had theretofore leased its railroad and property to Frisco; that the latter had accepted the same, and that it intended to terminate and cancel, and did thereby terminate and cancel upon the expiration of 12 months after the service of said notice, the trackage agreement of February 13, 1922. It was to prevent the cancellation thus threatened that this suit was instituted.

At the threshold we are met with a challenge to the jurisdiction of the District Court. Appellant Southern and appellee Eastern are both citizens of the state of Arkansas. Appellant seeks to sustain the jurisdiction on two grounds:

(1) It asserts that because Frisco has acquired the entire capital stock of Eastern and a leasehold of its railroad property for a period of 99 years, with privilege of unlimited renewal, Eastern has, during the life of the trackage agreement, no interest in this controversy, is purely a formal and unnecessary party, and may be disregarded from the standpoint of federal jurisdiction.

(2) It contends that interpretation of the trackage agreement and enforcement of the rights of the parties thereunder require the application and construction of a law of the United States, to wit, the Interstate Commerce Act of 1887, as amended, and particularly by the Transportation Act of 1920 (41 Stat. 456, 49 USCA § 1 et seq.).

We shall consider these points in their order.

1. The Supreme Court of the United States in Wormley v. Wormley, 8 Wheat. 421, 451 (5 L. Ed. 651), has laid down the following rule:

"This court will not suffer its jurisdiction to be ousted by the mere joinder or nonjoinder of formal parties but will rather proceed without them, and decide upon the merits of the case between the parties, who have the real interests before it, whenever it can be done, without prejudice to the rights of others."

This rule has been consistently adhered to. McNutt v. Bland, 2 How. 9, 11 L. Ed. 159; Bonnafee v. Williams, 3 How. 574, 11 L. Ed. 732; Wood et al. v. Davis, 18 How. 467, 15 L. Ed. 460; Walden v. Skinner, 101 U. S. 577, 25 L. Ed. 963; Bacon v. Rives, 106 U. S. 99, 1 S. Ct. 3, 27 L. Ed. 69; Maryland v. Baldwin, 112 U. S. 490, 5 S. Ct. 278, 28 L. Ed. 822; Wilson v. Oswego Township, 151 U. S. 56, 14 S. Ct. 259, 38 L. Ed. 70; Construction Co. v. Cane Creek, 155 U. S. 283, 15 S. Ct. 91, 39 L. Ed. 152.

This court, speaking through the late Judge Sanborn, has drawn the essential distinction between necessary and proper or formal parties thus:

"The general rule in chancery is that all those whose presence is necessary to a determination of the entire controversy must be, and all those who have no interest in the litigation between the immediate parties, but who have an interest in the subject-matter of the litigation, which may be conveniently settled therein, may be, made parties to it. The former are termed the necessary, and the latter the proper, parties to the suit. The limitation of the jurisdiction of the federal courts by the citizenship of the parties, and the inability of those courts to bring in parties beyond their jurisdiction by publication has resulted in a modification of this rule, and a practical division of the possible parties to suits in equity in those courts into indispensable parties and proper parties. An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree between the parties before the court cannot be made without affecting his interest, or leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. Every other party who has any interest in the controversy or the subject-matter which is separable from the interest of the parties before the court, so that it will not be immediately affected by a decree which does complete justice between them, is a proper party." Sioux City Terminal Railroad & Warehouse Co. v. Trust Co. of North America, 82 F. 124, 126.

From the foregoing citations it appears that where a party has no real interest in the controversy which might be injuriously affected, his presence, which might otherwise oust the jurisdiction, will be disregarded, and jurisdiction will be retained. It is obvious under the facts of this case that Eastern is not a necessary party to a complete adjudication of the controversy between Southern and Frisco. It has leased all its railroad properties to the latter for a period of 99 years with the privilege of recurrent renewals for like periods. Frisco has acquired all its capital stock, and its continued formal corporate existence is without practical significance so far as this controversy is concerned. As a purely formal and unnecessary party its presence in this suit will be disregarded, and the jurisdiction of the district court sustained. In view of the conclusion reached upon this point, it becomes unnecessary to consider the second.

Coming now to the merits, it is apparent from the language of clauses 21 and 22 of the contract between Eastern and Southern, that the sole ground for cancellation of that contract is the "sale or lease of its (Eastern's) railroad properties to some other company not owned or controlled by the party of the first part, or in the event of the amalgamation of its (Eastern's) railroad properties with some other railroad under any law passed by the Congress of the United States." Such cancellation, however, cannot be made, except on 12 months' written notice of the intention, the occasion, and the necessity therefor. This notice shall not expire in any event until 6 months after the contract for such sale or lease has been conclusively accepted or approved or the order of amalgamation made. Unless so terminated on notice, the provisions of the contract shall continue for an additional period of 10 years from date of expiration, unless, again, either party, at least 12 months prior to said date of expiration, shall give notice in writing that it does not desire the contract to be so extended.

It is finally provided in clause 23 that the

agreement shall inure to the benefit of and be binding upon the successors and assigns of the respective parties thereto. From the foregoing it is to be seen that the contract could not be canceled at the will of either party, except upon the happening specified and then only upon seasonable notice. The limitations imposed and the language employed are strongly persuasive of the purpose and intent that the act of cancellation should be dictated by the necessities or interests arising from the proposed sale, lease, or amalgamation, and that the 12 months' notice to be served should antedate the consummation of such sale, lease, or amalgamation. This is suggested by the provision that this notice should not expire in any event until at least 6 months after the conclusive acceptance, approval, or consummation of the proposed change. However this may be, cancellation, upon sale, lease, or amalgamation, does not necessarily follow. It is a privilege that may be exercised or waived. The successors or assigns of the first party may enjoy all the benefits of the contract until its expiration by final notice, given at least 12 months prior to the date of expiration, and, in default of such notice by either party, the contract may continue in force for another 10 years. Such is the necessary effect of the provision that the "agreement shall inure to the benefit of and be binding upon the successors and assigns of the respective parties."

It is impossible to give full effect to the meaning of the language employed, and to the evident purpose of the parties to the contract, if it is not conceded that the privilege of cancellation upon sale, lease, or amalgamation may be waived, and that the successor, through sale, lease or amalgamation, may be substituted for the first party with all the rights, privileges, benefits and liabilities, incidental to the contract. In this aspect the chronology of the happenings decisive of the situation is of interest. The contract in question is dated February 13, 1922, and expires February 13, 1932, unless extended. The date of the lease from Eastern to Frisco is November 5, 1925. The notice of cancellation under consideration was dated May 9, 1927, and was served May 14, 1927. The cancellation demanded was, by the terms of the notice, to take effect May 14, 1928.

It thus appears that this notice cannot be construed as that provided to be given in order to prevent extension of the contract for an additional 10-year period. Its binding force is based flatly upon the contention that the contract confers upon the first party the right, at this time, to insist upon cancellation because of the lease theretofore given to the Frisco. It is conceded that this lessee entered immediately upon the possession and control of the railroad properties of Eastern; that it has recognized this contract and has accepted from Southern the rentals accruing thereunder for a period of 17 months prior to the serving of this notice. It is our opinion, under the circumstances and the undisputed facts presented, that Frisco has, for all purposes material to this controversy, completely absorbed Eastern, has become its successor in the contract in suit, and accordingly is bound by its provisions; that it has waived its privilege to cancel that contract except upon the terms and conditions conferred upon an original party thereto. Eastern no longer occupies such a position. The notice served was, in effect, the act of Frisco. But the terms of the contract, under the facts disclosed by the record, confer upon the latter road no privilege of cancellation of this contract upon the grounds stated.

The conclusion reached makes it unnecessary to consider the remaining points urged. It follows that the decree below is reversed, and the cause remanded to the court below, with directions to grant the injunction prayed, but without prejudice to the right of either party, if so minded, to notify the other party in writing, at least 12 months prior to the date of expiration of the contract, that it does not desire the contract to be extended for an additional period of 10 years, all as in said contract provided. It is so ordered.