JAMES D. JOHNSON v. VELMA Q. SMITH, INDIVIDUALLY, AND SMITH-LOWRY ASSOCIATES, INC.; JOHN LEE HUFF v. VELMA Q. SMITH, INDIVIDUALLY, AND SMITH-LOWRY ASSOCIATES, INC.

No. 8126SC720

(Filed 20 July 1982)

Insurance § 2.3— automobile accident—default judgments against tort-feasor—liability of agent for failure to procure automobile liability insurance

In actions arising from an automobile accident whereby plaintiffs obtained default judgments against the tort-feasor and they sought to enforce the judgment against the tort-feasor's insurance agent for failure to procure automobile liability insurance, the trial court erred in dismissing both of the plaintiffs' actions. Although plaintiffs did not notify defendants of the suits prior to obtaining entries of default and default judgments against the tort-feasor, plaintiffs' rights against the tort-feasor could be adjudicated without necessarily affecting defendants since the default judgment was only evidence of their possible liability over to plaintiffs, and defendants are free to assert independent defenses to the action against them and to attack the default judgment laterally. G.S. 20-279.21(f)(1), pertaining to the need to notify an insurer of an action against an insured, was not relevant since there was no insurer involved.

APPEAL by plaintiffs from *Lewis, Judge.* Judgment entered 29 April 1981 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 10 March 1982.

Plaintiffs appeal from the dismissal of two consolidated civil actions. Plaintiffs were injured in an automobile accident and obtained default judgments against the tort-feasor, John Bradley

Glenn. They sought to enforce the judgments against Glenn's insurance agent for failure to procure automobile liability insurance.

The superior court found as fact that Glenn paid defendants for six months liability insurance coverage on a 1965 Oldsmobile. Defendants attempted to acquire coverage for Glenn's automobile with Lumbermen's Mutual Casualty Company pursuant to the North Carolina Reinsurance Facility, but the policy was never issued and defendants never notified Glenn or returned his premium.

Glenn had an automobile accident on 3 March 1978 in which plaintiffs Huff and Johnson, passengers in Glenn's vehicle, were injured. Glenn notified defendants of the accident within three days. Johnson and Huff filed suits against Glenn in April and July of 1979, respectively. Glenn did not forward the suit papers to anyone, nor did plaintiffs notify defendants of the suits prior to obtaining entries of default and default judgments of $15,000 for Johnson and $12,000 for Huff. Plaintiffs, alleging breach of contract, brought individual actions to recover from defendants on their judgments against Glenn. Defendants answered. The two cases were consolidated for trial without a jury.

The court concluded as a matter of law that defendants breached their contractual obligation to procure liability insurance for Glenn, but that plaintiffs had failed to comply with the notice requirement of G.S. 20-279.21(f)(1). Citing "constitutional restraints of due process," the trial judge refused to enforce plaintiffs' award against defendants and dismissed both actions on 29 April 1981. Plaintiffs appealed.

*Paul J. Williams for plaintiff appellants.*

*Marnite Shuford for defendant appellees.*

MORRIS, Chief Judge.

Plaintiffs argue that they should be allowed to collect from defendants their judgments against Glenn, because defendants breached their contract to procure liability insurance for Glenn, even though defendants had no formal notice of the prior suit. We hold that the default judgments are evidence of a loss for which

defendants may have been liable and that the trial judge committed error in dismissing the action.

In North Carolina, "if an insurance agent or broker undertakes to procure for another insurance against a designated risk, the law imposes upon him the duty to use reasonable diligence to procure such insurance and holds him liable to the proposed insured for loss proximately caused by his negligent failure to do so." (Citations omitted.) *Mayo v. American Fire and Casualty Co.*, 282 N.C. 346, 353, 192 S.E. 2d 828, 832 (1972). The agent may be held liable within the amount of the proposed insurance. *Meiselman v. Wicker*, 224 N.C. 417, 30 S.E. 2d 317 (1944). Plaintiffs had the option of suing either for breach of contract or for negligent default in the performance of a duty imposed by contract. *Id.* Their complaint, which alleged an oral contract between Glenn and defendants to procure insurance and defendants' failure to perform, clearly sounded in contract.

It has been held that a public liability policy applicant's judgment creditors, third party beneficiaries of a contract to procure automobile insurance, may sue a breaching agent directly. *Gothberg v. Nemerovski*, 58 Ill. App. 2d 372, 208 N.E. 2d 12 (1965).

Plaintiffs' loss, which amounted to an inability to collect on their judgments for lack of an insurance company ultimately liable, was proximately caused by defendants' failure to procure the desired coverage. The liability that plaintiffs sought to satisfy was well within the amount of coverage required by the North Carolina Motor Vehicle Safety and Financial Responsibility Act and hence necessarily within the coverage contemplated by the parties.

The trial court's order dismissing the case included the following conclusions of law:

3. Had Lumbermen's Mutual issued a Policy to Glenn through the North Carolina Motor Vehicle Reinsurance facility, as was requested, these Plaintiffs could not have used the Default Judgment "as a basis for obtaining Judgment against the Insuror" because Plaintiffs failed to comply with G.S. 20-279.21(f)1;

4. In the absence of any formal notice of suit, entry of Default, or Notice of Hearing on inquiry for damages, this Court cannot within the Constitutional restraints of due process, visit the damages awarded Huff and Johnson in earlier judgments on these defendants.

Finding of fact No. 3 is an accurate observation, but it is irrelevant since the present suit was brought against an insurance agent, not the insurer, and because no insurance was ever issued. The second sentence of G.S. 20-279.21(f)(1) reads:

As to policies *issued* to insureds in this State under the assigned risk plan or through the North Carolina Motor Vehicle Reinsurance Facility, a default judgment taken against such an *insured* shall not be used as a basis for obtaining judgment *against the insurer* unless counsel for the plaintiff has forwarded to the insurer, or to one of its agents, by registered or certified mail with return receipt requested, or served by any other method of service provided by law, a copy of summons, complaint, or other pleadings, filed in the action.

(Emphasis added.) The court's duty, in interpreting statutes, "is to ascertain and effectuate the intent of the Legislature." *Investors, Inc. v. Berry,* 293 N.C. 688, 695, 239 S.E. 2d 566, 570 (1977). Earlier absence in G.S. 20-279.21 of a notice requirement despite the absolute liability imposed on insurers by the statute, case law from that period, and the wording of the statute indicate that "a manifest purpose of G.S. 20-279.21(f)(1) is to require the plaintiff to give the insurer of assigned risk or Reinsurance Facility individuals notice of actions brought against such persons so that the insurer may protect its interests." *Love v. Nationwide Insurance Co. and Nationwide Insurance Co. v. Moore,* 45 N.C. App. 444, 448, 263 S.E. 2d 337, 339-40, *cert. denied,* 300 N.C. 198, 269 S.E. 2d 617 (1980). It was not within the contemplation of the Legislature that the statute would protect brokers or agents in breach of contract. Plaintiffs would have been in a position to recover for the injuries suffered had defendants performed their contract to procure insurance. It is merely speculative whether plaintiffs would have notified the insurer pursuant to G.S. 20-279.21 had insurance actually been issued.

Nor was there a denial of due process, to either defendants or a would-be insurer, for lack of notice that plaintiffs were seeking a default judgment against the tort-feasor. The question is only pertinent as to defendants, of course, there being no insurer in this case. It has been said that

> "[t]he question how far a judgment or decree is conclusive against a surety of a defendant, *or against one who is liable over to defendant,* and who was not a party to the action, is involved in the greatest confusion. Between the intimate relations which exist between such a person and the defendant in the suit, on the one side, and the fundamental principle that no one ought to be bound by proceedings to which he was a stranger, on the other, the courts have found it difficult to steer."

(Emphasis added.) *Dixie Fire Insurance Co. v. American Bonding Co.,* 162 N.C. 384, 391, 78 S.E. 430, 433 (1913). The North Carolina Supreme Court in *Dixie Fire,* a case arising in the context of principal and surety, said that "such a judgment against the principal prima facie only establishes the sum or amount of the liability against the sureties, although not parties to the action, but the sureties may impeach the judgment for fraud, collusion, or mistake, as well as set up an independent defense." *Id.* at 392. We note, moreover, that a party to a contract is ordinarily not a necessary party in a suit brought against the other contracting party by a beneficiary who claims the contract has been breached. *Pickelsimer v. Pickelsimer,* 255 N.C. 408, 121 S.E. 2d 586 (1961). See *Gothberg v. Nemerovski,* supra.

We hold, based on the above, that the default judgments against the tort-feasor, Glenn, are proof of the plaintiffs' loss, that defendants were merely proper parties whose interests might be affected by the default judgment, and that plaintiffs' rights against Glenn could be adjudicated without necessarily affecting defendants since the default judgment is only evidence of their possible liability over to plaintiffs. Defendants are free to assert independent defenses to the action against them and to attack the default judgment collaterally.

We reverse the superior court's dismissal and remand for further proceedings.

Reversed and remanded.

Judges HEDRICK and VAUGHN concur.