EYAL LIOR, Sun Cupid Int'l
(U.S.) Inc., Plaintiffs,

v.

Michael P.J. SIT, Sun Cupid Industries,
Ltd., Sun Cupid Int'l (Holdings) Co.,
Ltd., Fourace Industries, Ltd., Conair,
Inc., Defendants.

Civil Action No. 95–6027 (AJL).

United States District Court,
D. New Jersey.

Jan. 11, 1996.

Stephen R. Gray, Nicholas I. Filocco, Paul A. Conciatori, Waters, McPherson, McNeill, P.C., Secaucus, New Jersey, for Plaintiffs.

Clifford N. Kuhn, Jr., Kuhn & Cahn, Piscataway, New Jersey, for Defendants.

### OPINION

LECHNER, District Judge.

This action is brought by plaintiff Eyal Lior ("Lior") and Sun Cupid International (U.S.) ("Sun Cupid U.S.") (collectively, the "Plaintiffs"), against defendants Michael P.J. Sit ("Sit"), Sun Cupid Industries, Ltd. ("Sun Cupid Industries"), Sun Cupid International (Holdings) Co., Ltd. ("Sun Cupid Holdings") and Fourace Industries, Ltd. ("Fourace")

(collectively, the "Defendants"). Plaintiffs have also listed Conair, Inc. ("Conair") as a defendant in the caption of the case. Removal jurisdiction is alleged pursuant to 28 U.S.C. § 1441(a) ("Section 1441(a)").

Currently before the court is the Plaintiffs' timely motion to remand this matter (the "Motion to Remand") to the Superior Court of New Jersey, Chancery Division, Bergen County (the "Superior Court") pursuant to 28 U.S.C. § 1447(c) ("Section 1447(c)") and for costs, expenses and attorney fees.[1] For the reasons set forth below, this matter is remanded to the Superior Court.

### Facts

#### A. Background

Plaintiffs filed a complaint in the Superior Court, and filed a verified amended complaint (the "Amended Complaint") in the Superior Court on 25 September 1995. Plaintiffs allege Lior, an individual, is a resident of the State of New Jersey, with a principal business office in Fort Lee, New Jersey. Amended Complaint, ¶ 1. Plaintiffs allege Sun Cupid U.S. is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in Fort Lee, New Jersey. *Id.*, ¶ 3. Sit, an individual, is allegedly a resident of Hong Kong, with a principal business office in Kowloon, Hong Kong. *Id.*, ¶ 6. Plaintiffs allege, on information and belief, that Sun Cupid Industries and Sun Cupid Holdings are corporations organized and existing under the laws of the Cook Islands, with principal places of business in Kowloon, Hong Kong. *Id.*, ¶ 7. Plaintiffs allege, on information and belief, that Fourace is a corporation organized and existing under the laws of Hong Kong, with a principal place of business in New Territories, Hong Kong. *Id.*, ¶ 8.

---

1. In support of the Motion to Remand, Plaintiffs submitted: Brief in Support of Plaintiff's Motion to Remand (the "Moving Brief"); Certification of Eyal Lior In Support of Motion to Remand (the "Lior Cert."); Certification of Jay S. Mehr In Support of Motion to Remand (the "Mehr Cert."); Certification of Nicholas Filocco In Support of Motion to Remand (the "Filocco Cert.").

In Opposition to the Motion to Remand, Defendants submitted: Brief in Opposition to Plaintiff's *Motion to Remand* (the "Opp. Brief"); Certification of Clifford N. Kuhn, Jr., In Support of Defendants' Opposition to Plaintiff's Motion to Remand (the "Kuhn Cert.") attaching the Certification of Richard A. Margulies In Opposition To Preliminary Injunctive Relief (the "Margulies Cert.").

Plaintiffs make no allegations in the Amended Complaint concerning the citizenship of Conair. Conair is a corporation organized and existing under the laws of the State of Delaware. Margulies Cert., ¶ 3. Most of Conair's officers, including the President, Lee Rizzuto, Vice Presidents Ronald Diamond and Francis Lindsey, and Eric Larson ("Larson"), a Conair manager of product development and engineering, maintain offices in Stamford, Connecticut. Lior Cert., ¶ 4; *see* American Business · Information, U.S. Business Directory ("ABI"), first report (the "First ABI Report") attached to Moving Brief as Exhibit A. Conair also has a facility in East Windsor, New Jersey. Mehr Cert., ¶ 3. A representative of the Plaintiffs has stated he was told by a Conair representative that "Stamford was the location of their corporate headquarters...." *Id.*, ¶ 4. Conair's engineering and product development departments are located in Stamford. Lior Cert., ¶ 5 & Exhibit A.

Although the Amended Complaint does not address the citizenship of Conair, the First ABI Report provides a list of thirty-nine Conair executives who maintain offices in Stamford, Connecticut. Moving Brief, Exhibit A. These executives comprise the headquarters of Conair, including the President and Chairman, the Treasurer, the Controller, the Executive Vice President, four Senior Vice Presidents, seventeen Vice Presidents, the Vice President for Finance, the Vice President for Human Resources, the Corporate Secretary, the General Counsel, the Executive Officer, the Purchasing Agent and seven Directors. *See id.* The second report, attached to the Moving Brief as Exhibit A, (the "Second ABI Report") provides a list of Conair executives who maintain offices with a mailing address in Hightstown, New Jersey.[2] The Second ABI Report lists one individual, with the title "manager," at that location. *Id.*

Plaintiffs allege Lior owns thirty percent of the shares of Sun Cupid U.S. and that Lior is a director and the President of Sun Cupid U.S. Amended Complaint, ¶ 2. Sit is allegedly the owner of seventy percent of the shares of Sun Cupid U.S., and is the chairman of the board of directors and the secretary-treasurer of that corporation. *Id.*, ¶ 4. Plaintiffs allege Sun Cupid Industries, Sun Cupid Holdings and Fourace (collectively, the "Manufacturing Group") manufacture "small household electrical appliances in Hong Kong and the People's Republic of China." *Id.*, ¶ 9. The Manufacturing Group allegedly manufactures breadmakers, toaster-ovens, bagel makers, pizza makers, hair clippers and hair driers. *Id.*, ¶ 14. Sit allegedly owns all of the stock of the entities that comprise the Manufacturing Group. *Id.*, ¶ 11.

Plaintiffs allegedly design and sell appliances manufactured by the Manufacturing Group. Amended Complaint, ¶ 12. The buyers of appliances designed and sold by Plaintiffs and manufactured by the Manufacturing Group are "Black and Decker, Inc., Toastmaster, Inc., Salton/Maxim Housewares, Inc., and Remington Products Company...." *Id.*, ¶ 15. Plaintiffs refer to these customers as the "Original Equipment Manufacturing Customers" (the "OEMs").[3] *Id.*, ¶ 18. In addition, Plaintiffs allegedly "service U.S. and worldwide customers of the Manufacturing Group, even with regard to appliances that [P]laintiffs do not directly design and sell, and also source components used by the Manufacturing Group in manufacturing all of its line of products." *Id.*, ¶ 13.

Plaintiffs allege a "relationship" with Defendants arose "in late 1993," wherein:

Defendants have manufactured and sold electrical appliances designed, sold and/or serviced by [P]laintiffs, in the sum of approximately $93,000,000.00 to [the OEMs], all of whom have offices or do business in the State of New Jersey. Most, if not all, of these customers of defendants became such customers directly from the contacts

---

**2.** Some of the submissions indicate Conair's New Jersey facility is located in Hightstown and others provide an East Windsor address. Because these two townships are next to one another and neither party has argued Conair maintains more than one facility in New Jersey, it is presumed that Conair maintains operations in only one location in New Jersey.

**3.** It appears Conair is allegedly one of the OEMs. Amended Complaint, ¶ 62 (alleging Defendants sell products to Conair on open account).

and efforts of Lior, who had fifteen years of experience in the small appliance business before his business association with ... Sit.

Amended Complaint, ¶ 15.

Plaintiffs allege that, for services rendered, Sit, personally and on behalf of the Manufacturing Group, agreed to compensate Lior and Sun Cupid U.S. by way of an advance or reimbursement of all of their "business-related expenses." Amended Complaint, ¶ 16(a). Lior would receive a "lump sum, non-refundable salary/advance" of $150,000.00, *id.*, ¶ 16(b), and personal commissions for each of certain specified appliances the Manufacturing Group sold. *Id.*, ¶ 16(c), (e). Sun Cupid U.S. would also receive commissions for each of certain specified appliances the Manufacturing Group sold. *Id.*, ¶ 16(d). In addition, Sun Cupid U.S. would be appointed "as worldwide agent of the Manufacturing Group" for which it would receive commissions for each of certain specified appliances "manufactured by ... Manufacturing Group...." *Id.*, ¶ 16(f). Finally, "Sit agreed to form a trading company [the "Trading Company"[4]], 30% owned by Lior, whose purpose was to sell appliances ... worldwide that were not then manufactured by the Manufacturing Group." *Id.*, ¶ 16(g). Lior was to receive thirty percent of the profits of the Trading Company. *Id.* The foregoing agreement was allegedly memorialized in a memorandum (the "Agreement"), signed by Lior and Sit on 23 April 1994. *Id.*, ¶ 17.

Pursuant to the Agreement, Lior and Sit formed Sun Cupid U.S. "in early 1994." Lior Cert., ¶ 2. Plaintiffs allege Sit failed to honor his obligations under the Agreement and also caused the Manufacturing Group to dishonor its obligations under the Agreement. Amended Complaint, ¶ 19. Plaintiffs allege damages, including the failure to receive commissions from Sit and the Manufacturing Group. *Id.*, ¶¶ 20–27. Plaintiffs allege Sit expressly repudiated the Agreement in June 1995. *Id.*, ¶ 28. Specifically, it is alleged Sit indicated to Lior that Sit would no longer pay to Lior the personal commissions due Lior under the Agreement.[5] *Id.* Instead, Sit allegedly indicated "Lior would have to look to his 30% interest in plaintiff Sun Cupid U.S. and the Trading Company for compensation for his efforts." *Id.*

Plaintiffs further allege Sit violated his fiduciary duty to Sun Cupid U.S. by directing the OEMs to deal directly with Sit and the Manufacturing Group, thereby bypassing the Plaintiffs. Amended Complaint, ¶ 29. In addition, Plaintiffs allege:

> Sit sabotaged the business of the Trading Company by stalling and delaying the fulfillment of orders for products, with the goal of having the Manufacturing Group manufacture the products, thereby keeping the manufacturing profits for himself with the goal of paying a 3% commission to ... Sun Cupid U.S., as opposed to ordering the products from third party manufacturers and splitting the Trading Company Profits 30% with ... Lior.

*Id.*, ¶ 30. Plaintiffs allege Sit ordered the offices of Sun Cupid U.S. closed after Lior demanded payment from Sit. *Id.*, ¶ 31. "The actions of ... Sit individually and on behalf of the Manufacturing Group ... effectively ended the business of [P]laintiffs, violated the [Agreement], and violated Sit's fiduciary duties to [P]laintiffs." *Id.*, ¶ 32.

Lior alleges causes of action against Defendants for breach of contract, Amended Complaint, ¶¶ 34–36, as well as quantum meruit. *Id.*, ¶¶ 37–39. Lior also alleges a cause of action derivatively on behalf of Sun Cupid U.S. for breach of contract, pursuant to N.J.S.A. § 14A:3–6. *Id.*, ¶¶ 40–46. In addition, Lior seeks from Sit profits of the Trading Company. *Id.*, ¶¶ 47–51. Lior also seeks to enjoin Sit from liquidating or transferring his interest in Sun Cupid U.S. *Id.*, ¶¶ 52–56. Moreover, Lior seeks an appraisal remedy against Sit under N.J.S.A. § 14A:12–7, to compel Sit to purchase Lior's thirty percent interest in Sun Cupid U.S. *Id.*, ¶¶ 57–58. Lior seeks a declaratory judgment that the Agreement "will continue to obligate [D]efen-

---

4. A proper name is not provided for the Trading Company in any of the submissions.

5. The commissions Sit allegedly refused to pay presumably are the commissions described in the Amended Complaint, ¶ 16(c), (e).

dants to pay commissions to [P]laintiffs on all products, so long as [D]efendants manufacture them." *Id.,* ¶¶ 59–61.

The Plaintiffs neither raise any substantive claims against Conair, nor do they define Conair in the introductory paragraphs of the Amended Complaint. The final count of the Amended Complaint seeks a writ of attachment against Conair, alleging Conair purchases products from the Defendants on open account. Amended Complaint, ¶¶ 62–64. Pursuant to N.J.S.A. §§ 2A:26–2, 2A:26–8 and 2A:26–13, Plaintiffs request "a restraining order in the nature of an attachment be issued against Conair, . . . and other companies licensed to or doing business in New Jersey that owe monies or credits, from remitting such proceeds to the [D]efendants pending further order of [the Superior C]ourt." *Id.,* ¶ 64.

### B. *Procedural History*

The Amended Complaint is dated 22 September 1995. The instant matter was commenced by way of an order to show cause (the "Order to Show Cause"), filed with the Superior Court on 25 September 1995.[6] Moving Brief at 1; *see* Defendants' Petition for Removal (the "Removal Petition"), ¶ 1. The Plaintiffs allege the Superior Court held hearings on the Order to Show Cause on 13 October and 2 November 1995. Moving Brief at 2.

After the hearings in October and November, Plaintiffs drafted a stipulation (the "Stipulation"), which they forwarded to counsel for Defendants by facsimile on 10 November 1995. Filocco Cert., ¶ 5 & Exhibit B (transmission report confirming transmittal of facsimile to Clifford Kuhn, Esq., counsel for Defendants, from Nicholas I. Filocco, Esq., counsel for Plaintiffs, on 10 November 1995). The Stipulation provided:

> [P]laintiffs commenced this action naming Conair . . . a defendant in the caption for purposes of obtaining injunctive relief; and . . . Plaintiffs' allegations with respect to Conair . . . are contained in the Eight (sic) Count of the Amended Verified Complaint

[¶¶ 62–64]—and the only relief sought in that Count is a restraining order in the nature of an attachment enjoining Conair . . . from paying any "rights, credits or monies" owed to the remaining [D]efendants pending the outcome of the litigation; and . . . the [Superior] Court has issued a Temporary Restraining Order dated [13 October] 1995, and a Preliminary Injunction dated [3 November] 1995 . . . granting the . . . injunctive relief against Conair . . . sought by [P]laintiffs; . . .

IT IS AGREED AND STIPULATED, as follows:

1.  Plaintiffs currently seek no substantive relief against Conair . . . other than the aforesaid injunctive relief in the nature of an attachment, and to the extent that any allegation in the Amended Verified Complaint can be construed to the contrary, it is hereby withdrawn.

2.  Conair shall not be required to answer or otherwise respond to the Complaint, nor shall it be required to participate in the litigation other than as a garnishee.

3.  Notwithstanding this stipulation, Conair . . . acknowledges that it is bound by the prior orders of [the Superior Court] . . . , and will comply with their terms, subject to the further order of [the Superior Court].

4.  Conair . . . hereby acknowledges that it directly, or through a related company or subsidiary controlled by it, is currently holding, and will continue to hold, $900,000[.00] in payables due to the . . . [D]efendants in accordance with [the prior orders of the Superior Court].

5.  This stipulation is executed without prejudice to any party with regard to any claim or defense they may have.

Stipulation.

As indicated in the Stipulation, the Superior Court entered a temporary restraining

---

**6.** Upon removal to this court, a copy of the order to show cause was not included within the submissions.

order on 13 October 1995. On 2 November 1995, the Superior Court issued a preliminary injunction (the "Preliminary Injunction") restraining Defendants from transferring or liquidating any of their assets located in the United States absent an order of the Superior Court. The Preliminary Injunction also enjoined Conair from paying $900,000.00 due to Defendants. Moving Brief at 2; *see* Removal Petition, ¶ 3 (asserting the Superior Court entered the Preliminary Injunction against Defendants on 2 November 1995); Stipulation (stating the Preliminary Injunction was dated 3 November 1995); Filocco Cert., ¶ 5 (stating that, on 2 November 1995, the Superior Court ordered the attachment of the debt owed by Conair to the Defendants).

Counsel for Defendants signed the Stipulation on 21 November 1995 and counsel for Plaintiffs signed the Stipulation on 28 November 1995. It was filed with the Superior Court on 28 November 1995. Filocco Cert., ¶ 6 & Exhibit C (copy of signed Stipulation); Kuhn Cert., ¶ 4 (stating counsel for Defendants signed the Stipulation on 2 November 1995, and the Stipulation was filed with the Superior Court on 28 November 1995).

Defendants filed the Removal Petition with the Clerk of the court on 28 November 1995. The Removal Petition asserts "on or about" 25 September 1995, Plaintiffs commenced the instant matter against Defendants in the Superior Court. Removal Petition, ¶ 1. The Removal Petition also asserts "Conair has been dropped from this matter pursuant to [the] Stipulation...." *Id.*, ¶ 2. In addition, Defendants assert they filed the Removal Petition "within thirty days of time after the Superior Court ... entered [the] Preliminary Injunction against [D]efendant[s] dated [2 November] 1995." *Id.*, ¶ 3. Diversity jurisdiction is asserted pursuant to 28 U.S.C. § 1332 ("Section 1332") and removal jurisdiction is asserted pursuant to Section 1441. *Id.*, ¶ 4.

Defendants assert complete diversity existed at the time they filed the Removal Petition. Removal Petition, ¶ 5. Specifically, Defendants assert Lior is a resident of New Jersey, *id.*, ¶ 6; Sun Cupid U.S. is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business in New Jersey, *id.*, ¶ 7; Sit is a resident of Hong Kong with a principal business office in Kowloon, Hong Kong, *id.*, ¶ 8; Sun Cupid Industries and Sun Cupid *Holdings* are organized and existing under the laws of the Cook Islands, with principal business offices in Kowloon, Hong Kong, *id.*, ¶ 9; and Fourace is a corporation organized and existing under the laws of Hong Kong, with principal business offices in New Territories, Hong Kong. *Id.*, ¶ 10.

The Removal Petition makes no mention of an "amended pleading, motion, order or other paper from which it [was] first ... ascertained that the case is one which [was] or ha[d] become removable...." 28 U.S.C. § 1446(b) ("Section 1446(b)"). As stated, the Removal Petition merely asserts "[t]his notice is being filed within thirty days of time after the Superior Court ... entered [the] Preliminary Injunction against [D]efendant[s] dated [2 November] 1995." Removal Petition, ¶ 3. As well, the Removal Petition makes no mention of the first date Defendants learned of this litigation, "through service or otherwise...." 28 U.S.C. § 1446(b).

On 1 December 1995, the Plaintiffs filed the Motion to Remand with the Clerk of the court. A status conference was held on 13 December 1995, pursuant to which the Moving Brief and Opposition Brief, with supporting certifications, were submitted. Defendants filed an Amended Petition For Removal on 14 December 1995 (the "Amended Removal Petition"). In addition to the statements concerning citizenship of the parties, diversity and removal jurisdiction that are present in the Removal Petition, the Amended Removal Petition also observes that "Conair ... has been dropped from this matter pursuant to [the] Stipulation.... which [was] filed with the [Superior] Court on [28 November] 1995." Amended Removal Petition, ¶ 3.

The Amended Removal Petition asserts "[t]his notice is being filed within thirty days of time after the filing of the Stipulation dismissing all claims against ... Conair.... This matter was not ripe for removal until said Stipulation was filed, because true diversity of citizenship did not exist until that

filing." Amended Removal Petition, ¶ 4. The Amended Removal Petition makes no mention of the date Defendants first received a copy of "an amended pleading, motion, order or other paper from which it [was] first ... ascertained that the case is one which [was] or ha[d] become removable...." 28 U.S.C. § 1446(b).

*Discussion*

### A. Background

Under the general Federal removal statutes, an action brought in state court can be removed by a defendant to a Federal district court if that Federal court would have had original jurisdiction over the action. Section 1441(a).[7] A defendant seeking to remove a case must file "a notice of removal ... containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served...." 28 U.S.C. § 1446(a) ("Section 1446(a)").

■ The removing party must show Federal subject matter jurisdiction exists and removal is proper. *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991); *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987), *cert. dism'd sub nom. American Standard, Inc. v. Steel Valley Auth.*, 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988); *Moore v. DeBiase*, 766 F.Supp. 1311, 1315 n. 5 (D.N.J.1991); *Mountain Ridge State Bank v. Investor Funding Corp.*, 763 F.Supp. 1282, 1288 (D.N.J.1991).

An action removed to Federal court may be remanded to state court pursuant to Section 1447(c) on the basis of any defect in the removal procedure.[8] As well, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

■ When confronted with a motion to remand, the removing party has the burden of establishing the propriety of removal. *Boyer*, 913 F.2d at 111; *Steel Valley*, 809 F.2d at 1010; *Moore*, 766 F.Supp. at 1315 n. 5; *Mountain Ridge*, 763 F.Supp. at 1288. Moreover, "removal statutes 'are to be strictly construed against removal and all doubts resolved in favor of remand.'" *Boyer*, 913 F.2d at 111 (quoting *Steel Valley*, 809 F.2d at 1010); *see Moore*, 766 F.Supp. at 1315 n. 5; *Mountain Ridge*, 763 F.Supp. at 1288.

■ Failure to file a notice of removal within the time period provided by the removal statutes is a sufficient basis for remand. *See Foster v. Mutual Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 50–53 (3d Cir. 1993); *Mountain Ridge*, 763 F.Supp. at 1288.

■ Section 1446(b) sets forth the time in which a removal petition must be filed:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, *through service or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based....

28 U.S.C. § 1446(b) (emphasis added). The burden of proof is on the removing party to show removal was timely. *See Boyer*, 913 F.2d at 111.

### B. Diversity Jurisdiction in the Instant Matter

■■ In this matter, Defendants allege diversity jurisdiction pursuant to Section 1332. Section 1332 provides that Federal district courts have jurisdiction over civil actions in which the amount in controversy exceeds the sum of $50,000.00, exclusive of interests and costs, brought between "citizens of different States and in which citizens or subjects of a foreign state are additional

---

7. Section 1441(a) provides in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court ... embracing the place where such action is pending.

28 U.S.C. § 1441(a).

8. Section 1447(c) provides in pertinent part:

> A motion to remand the case on the basis of *any* defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a).

28 U.S.C. § 1447(c) (emphasis added).

parties." 28 U.S.C. § 1332(a)(3). To satisfy the jurisdictional requirements of Section 1332, "diversity must be complete; that is, no plaintiff can be a citizen of the same state as any of the defendants." *Midlantic Nat'l Bank v. Hansen*, 48 F.3d 693, 696 (3d Cir.) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187, 110 S.Ct. 1015, 1017, 108 L.Ed.2d 157 (1990)), *cert. dismissed*, —— U.S. ——, 116 S.Ct. 32, 132 L.Ed.2d 914 (1995). In addition, "[w]hether diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the complaint was filed." *Id.* (citing *Smith v. Sperling*, 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1114 n. 1, 1 L.Ed.2d 1205 (1957)). As stated, Plaintiffs are citizens of the State of New Jersey and Sit, an individual defendant, is a citizen of Hong Kong.

■ For diversity jurisdiction purposes, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." 28 U.S.C. § 1332(c)(1). In the Third Circuit, "principal place of business" has been consistently defined as "the location of 'the headquarters of day-to-day corporate activity and management.'" *Holly Farms Corp. v. Taylor*, 722 F.Supp. 1152, 1157 (D.Del.1989) (quoting *Kelly v. United States Steel Corp.*, 284 F.2d 850, 854 (3d Cir.1960)); *see Hansen*, 48 F.3d at 696 ("'corporate activities' determine the corporation's principal place of business") (quoting *Kelly*, 284 F.2d at 854). In this case, Sun Cupid Industries and Sun Cupid Holdings, both of which are corporate defendants, are citizens of both the Cook Islands and Hong Kong because, as all parties concede, they are organized in the former state and have their principal place of business in the latter. All parties also concede that Fourace, another corporate defendant, is a citizen of Hong Kong because it is incorporated and has its principal place of business there.

■ There is no dispute that Conair, the garnishee, is a citizen of Delaware; it is incorporated in that state. Margulies Cert.,

¶ 3. The parties do not agree upon Conair's principal place of business. Plaintiffs argue Conair has its principal place of business in Connecticut and is therefore a citizen of that state for diversity purposes. Moving Brief at 13–16. Defendants argue Conair's principal place of business for diversity purposes is the State of New Jersey. Opp. Brief at second unnumbered page. Conair's principal place of business is a critical point in deciding the Motion to Remand. If Conair's principal place of business is Connecticut, as Plaintiffs argue, then complete diversity of jurisdiction between the parties existed from the time the instant matter was commenced and the thirty-day time limit for removal under Section 1446(b) must be calculated accordingly.

In support of their argument that Connecticut is the location of Conair's "headquarters of day-to-day corporate activity and management," *see Kelly*, 284 F.2d at 854, Plaintiffs have established that thirty-nine Conair executives maintain offices in Stamford Connecticut. Moving Brief, Exhibit A (First ABI Report).[9] These executives include the President and Chairman, the Treasurer, the Controller, the Executive Vice President, four Senior Vice Presidents, seventeen Vice Presidents, the Vice President for Finance, the Vice President for Human Resources, the Corporate Secretary, the General Counsel, the Executive Officer, the Purchasing Agent and seven Directors. *Id.; see* Lior Cert., ¶ 4 (stating Conair's President, two Vice–Presidents and a manager for product development and engineering maintain offices in Stamford, Connecticut); Filocco Cert., ¶ 7 ("[A]ll contact with Conair, whether by phone, mail or fax [by Counsel for Plaintiffs in this litigation], has always been through their Stamford, Connecticut, headquarters. At no time did Conair direct [counsel] to communicate with the office or personnel in New Jersey."). By comparison, the Second ABI Report indicates only one Conair executive, with the title "manager," maintains an office in New Jersey. Moving Brief, Exhibit A.

---

9. Plaintiffs urge the Court to take judicial notice of the First ABI Report and Second ABI Report, pursuant to Fed.R.Evid. 201(b). *See* Moving Brief at 15 n. 4. It is not necessary to address this issue. Defendants, who bear the burden of establishing the propriety of removal, *see Boyer*, 913 F.2d at 111, have not contested the validity of these reports.

Litigation counsel for Plaintiffs also stated he "personally telephoned Conair's facility in East Windsor, New Jersey on two separate occasions" when "attempting to ascertain the proper Conair location in which to send the Order to Show Cause, Amended Complaint, [Moving] Brief and Certification...." Mehr Cert., ¶ 2. Counsel "was told by a Conair representative on both occasions that the East Windsor, New Jersey facility was merely a Conair distribution center, and that all legal papers should be sent to Conair's corporate headquarters, located in Stamford, Connecticut." Id., ¶ 3. Counsel "personally telephoned Conair's offices in Stamford, Connecticut, and confirmed that Stamford was the location of their corporate headquarters, and that all legal papers should be sent to that location." Id., ¶ 4.

Lior has stated that, when Sit came to the United States to conduct business in connection with Sun Cupid U.S., Lior "often drove him to meetings at the offices of our client companies." Lior Cert., ¶ 3. Lior has stated that he drove Sit "to Conair's executive offices in, Stamford, Connecticut" on "at least five (5) difference (sic) dates...." Id. Lior also stated that Sun Cupid U.S. personnel "occasionally were in contact with the Engineering Department and Product Development Department of Conair whose offices were located in Stamford Connecticut." Id., ¶ 5.

Plaintiffs have also submitted photocopies of business cards of three employees of Conair; "Tony Grant, Sr. Project Engineer," "[Larson], Director New Product Development" and "Roger Ho, Project Manager, Appliances." Lior Cert., Exhibit A. The business cards of the first and second of these individuals include only Stamford, Connecticut addresses and telephone numbers; the third individual lists both Stamford and Hong Kong addresses and telephone numbers on his business card. Id. In addition, Plaintiffs have submitted copies of two different facsimiles from a representative of Sun Cupid Industries to Conair; both are sent to the attention of Larson. Id., Exhibit B.

The submissions of the Defendants do not establish that Conair's corporate headquarters were located in New Jersey when Plaintiffs commenced this matter. Defendants argue "Conair ... is a Delaware based corporation which maintains its executive offices in the State of New Jersey." Opp. Brief at first unnumbered page (citing Margulies Cert.); see also Kuhn Cert., ¶ 3 ("As attested to in the annexed Certification of Richard Margulies, Conair ... is a Delaware based corporation which maintains executive offices in the State of New Jersey."); id., ¶ 6 ("The within matter was not removable prior to the execution and filing of the Stipulation dismissing all claims against Conair, ... since [Conair] maintained its executive offices in the State of New Jersey"). In support of their argument, Defendants offer the statement of a vice president of Conair, who stated, "Conair is a Delaware corporation with executive offices in New Jersey that develops and markets personal care products throughout the world." Margulies Cert., ¶ 3. Defendants have offered nothing to establish that the so-called executive offices maintained by Conair in New Jersey are its principal place of business. Defendants do not address the relative distribution of Conair corporate officers and directors in Connecticut and a manager in New Jersey, as set out in the First ABI Report and Second ABI Report.

As stated, Defendants must show Federal subject matter jurisdiction exists and removal is proper. Boyer, 913 F.2d at 111; Steel Valley, 809 F.2d at 1010. Defendants have failed to establish that Conair's "headquarters of day-to-day corporate activity and management" are located in New Jersey. The submissions clearly indicate that Conair's principal place of business is located in Stamford, Connecticut. Under Section 1332(c), then, Conair is a citizen of Delaware and Connecticut. There is no indication Conair is, or was, a citizen of New Jersey at the time the Order to Show Cause was filed. It appears that complete diversity in this matter existed when Plaintiffs filed the Order to Show Cause with the Superior Court on 25 September 1995. At the very latest, Defendants first received "a copy of the initial pleading setting forth the claim for relief" upon which the instant action is based on or before the date of the first hearing on the

Order to Show Cause, which was held on 13 October 1995. Defendants waited until the Stipulation was filed to remove the action instead of filing the Removal Petition within thirty days of receipt, "through service or otherwise" of the Order to Show Cause. Accordingly, neither the Removal Petition nor the Amended Removal Petition was timely filed, and the Motion to Remand must be granted. *See* Section 1446(b).

### C. Removal of Diversity Cases Joining Nominal Defendants

In addition to arguing that Conair's citizenship did not destroy diversity, Plaintiffs assert Conair is merely a nominal defendant and should not be considered at all in determining whether there was complete diversity in this matter from its inception. Moving Brief at 11–13.

■ The citizenship of nominal parties is not considered in determining whether complete diversity exists. " '[A] [F]ederal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.' " *Bumberger v. Insurance Co. of North America*, 952 F.2d 764, 767 (3d Cir.1991) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 1782, 64 L.Ed.2d 425 (1980)); *see Steel Valley*, 809 F.2d at 1010.

■ In this case, Plaintiffs raised no substantive claims against Conair in the Amended Complaint, but merely joined Conair as a garnishee. *See* Amended Complaint, ¶¶ 62–64. Plaintiffs do not seek to litigate the propriety or extent of Conair's debt to the Manufacturing Defendants. Accordingly, the citizenship of Conair had no bearing on the propriety of removal jurisdiction.

The joinder of a garnishee, who is merely "the holder of the stakes of the dispute," has no bearing upon diversity jurisdiction. *Matchett v. Wold*, 818 F.2d 574, 576 (7th Cir.) (citing *Bacon v. Rives*, 106 U.S. 99, 1 S.Ct. 3, 27 L.Ed. 69 (1882)), *cert. denied*, 484 U.S. 897, 108 S.Ct. 230, 98 L.Ed.2d 189 (1987). Because Defendants waited until the Stipulation was filed with the Superior Court to file the Removal Petition, removal was untimely

under Section 1446(b) and remand is appropriate under Section 1447(c).

As explained by the Circuit: "[R]emoval statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.' " *Boyer*, 913 F.2d at 111 (quoting *Steel Valley*, 809 F.2d at 1010); *see Institute of Pa. Hosp. v. Travelers Ins. Co.*, 825 F.Supp. 727, 729–30 (E.D.Pa.1993); *Moore*, 766 F.Supp. at 1315 n. 5. Defendants have the burden of showing proper removal. *Boyer*, 913 F.2d at 111. Defendants have not carried their burden of showing proper removal in this case.

### D. Removal of Diversity Cases Upon Subsequent Developments Creating Diversity Jurisdiction

Defendants submit that this matter did not become initially removable until the Stipulation was filed with the Superior Court, on 28 November 1995, because there was no complete diversity until Conair was dismissed. Opp. Brief at second unnumbered page.

Section 1446(b) provides:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, *through service or otherwise*, of a copy of an amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is one which is or has become removable....

28 U.S.C. § 1446(b) (emphasis added). Defendants argue the Stipulation is the "other" paper which first made the matter removable. *See* Amended Removal Petition, ¶ 4 ("This notice is being filed within thirty days of time after the filing of the Stipulation dismissing all claims against ... Conair.... This matter was not ripe for removal until said Stipulation was filed, because true diversity of citizenship did not exist until that filing.").

■ Plaintiffs, however, have established that Defendants first received a copy of the Stipulation via facsimile on 10 November 1995. Filocco Cert., ¶ 5 & Exhibit B (facsimile report confirming transmission of Stipulation to counsel for Defendants on 10 November 1995). As stated, Section 1446(b)

requires removal within thirty days of receipt, "through service or otherwise," of a paper from which it may be first ascertained that a matter is removable. 28 U.S.C. § 1446(b). Because Defendants first received on 10 November 1995 a copy of the Stipulation, the "other paper from which it [was] first ... ascertained that the case [was] ... removable," they had thirty days from that date, or until 11 December 1995, to remove the instant matter. The Amended Removal Petition was untimely filed on 14 December 1995; remand is therefore also warranted on this basis. *See* Section 1446(b).

### E. *Recovery of Expenses Pursuant to Section 1447(c)*

Plaintiffs seek costs and attorney fees in connection with the Motion to Remand. In support of their motion for costs and fees, Plaintiffs observe that they "have been required to respond to two separate Notices of Removal, neither of which were filed within the mandatory thirty day period...." Moving Brief at 20. Moreover, Plaintiffs allege "both Petitions for Removal fail to establish a *prima facie* case for removal to Federal court." *Id.*

■■■■ "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). An award of costs and attorney fees under Section 1447(c) is in the discretion of the court. *Daleske v. Fairfield Communities, Inc.,* 17 F.3d 321, 325 (10th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 1832, 128 L.Ed.2d 461 (1994); *Moore v. Permanente Medical Group, Inc.,* 981 F.2d 443, 446 (9th Cir.1992). A finding of bad faith by the removing party is not required for an award under Section 1447(c). *Gotro v. R & B Realty Group,* 69 F.3d 1485, 1487 (9th Cir.1995) (citing *Moore,* 981 F.2d at 446); *Daleske,* 17 F.3d at .324 (citing *Morris v. Bridgestone/Firestone, Inc.,* 985 F.2d 238, 240 (6th Cir.1993)); *Miranti v. Lee,* 3 F.3d 925, 928–

29 (5th Cir.1993) (denying attorney fees because the defendant's decision to remove was "reasonable" but also stating that a finding of bad faith is not required for an award under Section 1447(c)); *Morgan Guar. Trust Co. v. Republic of Palau,* 971 F.2d 917, 923–24 (2d Cir.1992) (holding bad faith is not required for award under Section 1447(c)). An award under Section 1447(c) is appropriate whether remand is based upon a jurisdictional defect or a defect in the removal procedure. *LaMotte v. Roundy's, Inc.,* 27 F.3d 314, 316 (7th Cir.1994).

■■■ As indicated, a review of the submissions demonstrates removal of this matter was improper on three grounds. There is no question that there was complete diversity between Plaintiffs and Defendants in this matter from its inception. In addition, Conair was a nominal defendant, and the citizenship of nominal defendants is disregarded for diversity purposes. Finally, even assuming the matter was not removable until Conair was dismissed from the action via the Stipulation, the Amended Removal Petition was not filed within thirty days of the date Defendants first received the Stipulation. An award of fees and costs, as requested, is therefore appropriate.[10]

### *Conclusion*

For the reasons stated, the Motion to Remand to the Superior Court is granted, and Plaintiffs are awarded costs and reasonable attorney fees associated with the instant motion, pursuant to Section 1447(c).

---

**10.** Defendants have not vigorously contested the Motion to Remand in their four page brief. After filing the Removal Petition and the Amended Removal Petition, it does not appear the Defendants thoroughly researched the issues raised, instead citing (for well-settled legal propositions) only seven dated district court cases, filed between 1958 and 1978. Moreover, the Defendants have not addressed Plaintiffs' motion for costs and attorney fees.