**Cynthia D. PARRISH, Plaintiff,**

v.

**The ARC OF MORRIS COUNTY, LLC, the ARC/Morris County Chapter, Inc., Robert Artis, Gloria Skarzynski-Burt, John Does 1-10, and ABC Corp. 1-10, Said Names Being Fictitious, Defendants.**

**Civil No.: 15-6395 (KSH) (CLW)**

United States District Court,
D. New Jersey.

Signed June 30, 2016

Ronald J. Wronko, Florham Park, NJ, for Plaintiff.

Thomas F. Doherty, McCarter & English, LLP, Newark, NJ, for Defendants.

## OPINION

Katharine S. Hayden, United States District Judge.

This matter comes before the Court by way of a motion to remand brought by plaintiff Cynthia Parrish. (D.E. 2.) Originally, she sued the ARC/Morris County Chapter, New Jersey, Inc. (the "ARC"), Robert Artis, Gloria Skarzynksi-Burt, and unnamed individuals and corporations (collectively, "defendants"), in New Jersey state court. Artis removed the case to federal court on the basis of federal question and supplemental jurisdiction. (D.E. 1 ¶¶ 8-10.) One month later, Parrish filed this motion, seeking a remand back to state court and attorneys' fees. The Arc/Morris County Chapter, New Jersey, Inc. was improperly pleaded as "The ARC of Morris County, LLC" and "The ARC/Morris County Chapter, Inc." Skarzynski-Burt was added by way of amended complaint in the state court several days after the complaint was filed. (D.E. 1 ¶¶ 1-2.)

## I. Background

According to the amended state court complaint filed in Essex County, Parrish began working for the ARC as a skill instructor in the Randolph Group Home in February, 2011. (D.E. 1-1 ("Am. Compl.") ¶¶ 4, 7.) In 2013, she was promoted to assistant manager, and then to manager. (Compl. ¶ 4.) She received favorable performance reviews and was never disciplined. (*Id.*) In January 2014, Parrish took medical leave under the federal Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, because she suffered a hernia and contracted a serious infection. (Am. Compl. ¶¶ 8-9.) Parrish alleges that Robert Artis, her immediate supervisor, was upset about the increased workload while she was out, and that he wanted her to truncate her leave and to do work while she was on leave. (Am. Compl. ¶ 10.) Parrish reported this to the personnel department, which allegedly instructed Artis to stop. (*Id.*)

The of plaintiff's contentions about the illegality of her termination appears in paragraphs 11 through 13 of the amended complaint:

11. Upon her return from leave, Mr. Artis told her that she need to complete and sign an Individual Health Plan (IHP) for a consumer. Plaintiff had not attended the IHP meeting. Plaintiff initially objected to performing this task to Mr. Artis as she believed that it would have given the false appearance that she had attended the IHP meeting. She believed in good faith that this would have constituted a false representation in violation of N.J.A.C. 10:44A-4.3. However, it was a condition of continued employment that she perform this task, so she was forced to perform.

12. Plaintiff further objected to being forced to complete and execute the IHP document to Executive Director by e-mail. Plaintiff also reported to the Executive Director that Mr. Artis was imposing upon her unreasonable work expectations in light of her return from her temporary disability.

13. Mr. Artis was angry with plaintiff that she reported him to the Executive Director, who was Mr. Artis' immediate supervisor. Mr. Artis subsequently acted on his retaliatory intent with the assistance and approval of Ms. Skarzynski-Burt and terminated plaintiff for a pretextual reason.[1]

(Am. Compl. ¶¶ 11-13.)

The official reason given for Parrish's termination arose out of an injury to a resident of the Randolph Group Home on May 27, 2014, about which the complaint goes into detail. (Am. Compl. ¶¶ 14-22.) A member of the night staff called her that night to advise that a resident had fallen down, but was not hurt or bleeding. Parrish directed the staff member to complete an incident report, and she called back twice to check on the individual involved. (Am. Compl. ¶¶ 14-15.) When Parrish returned to work after the Memorial Day holiday, she noticed that the resident had a black eye, and she arranged for medical attention. (Am. Compl. ¶¶ 17-18.) Parrish was suspended and then terminated based on the allegedly pretextual reason that she should have advised the night staff to call 911 immediately. (Am. Compl. ¶ 19.) Parrish alleges there were other instances where individuals in ARC group homes fell and were injured, the managers did not call 911, and these managers were not terminated. (Am. Compl. ¶¶ 21-22.)

---

1. The Amended Complaint refers to residents of the Randolph Group Home as "consumers." (Am. Compl. ¶¶ 11, 14-22.)

Parrish filed suit in state court on May 28, 2015, alleging four causes of action—three under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et. seq.* (the "NJLAD"), and one under the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 *et seq.* ("CEPA"). Count one alleges retaliation under the NJLAD (Am. Compl. ¶¶ 24-27); count two alleges discrimination under the NJLAD (Am. Compl. ¶¶ 28-31); count three alleges "aiding and abettor liability under the [NJLAD]" (Am. Compl. ¶¶ 32-35); and count four alleges retaliation in violation of CEPA (Am. Compl. ¶¶ 36-40). Parrish amended her complaint on June 1, 2015, adding Skarzynski-Burt as an additional defendant, but she did not otherwise alter her claims. Defendants removed to federal court on August 28, 2015, and Parrish filed the pending motion to remand. (D.E. 1-2.) The matter has been fully briefed, and the Court decides the motion on the papers. Fed. R. Civ. P. 78(b).

## II. Legal Standard

This Court's removal jurisdiction is defined by 28 U.S.C. § 1441: "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant[(s)] . . . to the district court of the United States[.]" Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This provision conferring federal question jurisdiction must be strictly construed, with all doubts resolved in favor of state court jurisdiction. *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 162 (3d Cir. 2014), *aff'd*, — U.S. —, 136 S.Ct. 1562, 1575, 194 L.Ed.2d 671 (2016); *Toney v. LaSalle Bank Nat.' Ass'n*, 36 F.Supp.3d 657, 661–62 (D.S.C.2014) ("Because federal courts are courts of limited jurisdiction and removal implicates serious federalism

concerns, removal restriction is strictly construed in favor of state court jurisdiction—i.e. '[i]f federal jurisdiction is doubtful, a remand is necessary.'") (quoting *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994)). To determine whether a claim arises under federal law, "we examine the 'well pleaded' allegations of the complaint and ignore potential defenses.'" *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).

Generally, an action arises under federal law for purposes of § 1331 "when federal law creates the cause of action asserted." *Gunn v. Minton*, — U.S. —, 133 S.Ct. 1059, 1064, 185 L.Ed.2d 72 (2013). Federal jurisdiction may exist where the complaint alleges only state law claims if "federal law completely preempts a state law claim or where a state law claim raises a substantial embedded federal issue that can be addressed by the federal courts without disturbing congressional intent." *MHA LLC v. HealthFirst, Inc.*, 629 Fed.Appx. 409, 411 (3d Cir.2015) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) (narrow exception for certain embedded federal issues)).

In determining whether there is an embedded federal issue, courts must apply all facets of the four-pronged *Grable* test: "'[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Manning*, 772 F.3d at 163 (quoting *Gunn*, 133 S.Ct. at 1065). "For a federal issue to be necessarily raised [under prong 1], 'vindication of a right under state law [must] necessarily turn[] on some construction of federal law.'" *Id.* (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers*

*Vacation Tr. for S. Cal.*, 463 U.S. 1, 9, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). This typically requires "a determination of federal law as an essential element of the plaintiff's state law claim." *Id.* The Third Circuit has recently explained that "[o]nly a 'slim category' of cases satisfy the *Grable* test." *Id.* (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006)).

## III. Discussion

Parrish raises only state law claims. Recognizing this in his removal petition, Artis claims that Parrish effectively invoked her rights under the FMLA based on the following portions of her amended complaint:

- "In January 2014, plaintiff took a medical leave of absence under the **Federal Family [and] Medical Leave Act** because she suffered from a hernia and, subsequently, contracted a serious infection that spread throughout her body."
- "Plaintiff's immediate supervisor, Robert Artis, was upset regarding **the increased workload he suffered because plaintiff took a medical leave of absence** on account of her disability."
- "Mr. Artis **called her constantly while she was out on leave and harassed her to return from her leave and/or to perform work while she was on her leave**," purportedly prompting Plaintiff to complain to the personnel department about such harassment.
- Plaintiff further contends that, "[u]pon her return from leave," she was subjected to retaliation, including that Defendant Artis allegedly "was imposing upon her unreasonable work expectations."

(D.E. 1 ("Notice of Removal") ¶ 8 (emphasis in original).) The Notice of Removal asserts that the relief Parrish seeks under state law "requires resolution of a substantial question of federal law in dispute between the parties." (*Id.* ¶ 9.) Not in the removal petition or elsewhere do defendants explain what that question is.

It appears Artis's point is that Parrish has brought an FMLA interference and/or retaliation claim under the guise of New Jersey state law. (*See id.* ("Although Plaintiff's Amended Complaint attempts, through artful pleading to characterize her [FMLA] claims as a form of disability discrimination and retaliation under New Jersey state law, the claim still 'arises under' the laws of the United States . . . .").) He supports this by noting that there is "no New Jersey state leave of absence statute [that] grants an employee the right to a leave of absence to address his or her own medical condition." (*Id.*) Defendants do not expand upon this point in opposing Parrish's motion to remand. Fundamentally, Artis claims that this Court has supplemental jurisdiction over all of the state law claims Parrish actually pled—the NJLAD claims for retaliation, disability discrimination, and aider and abettor liability, plus her claim for retaliation in violation of CEPA—because these claims arise out of the same factual allegations as Parrish's embedded FMLA interference and retaliation claim. (D.E. 1 ¶ 10 (citing 28 U.S.C. § 1367).)

Parrish argues that she has asserted only state law claims and that her causes of action are established without any reliance on federal law and without having to resolve any question relating to federal law. Defendants, who collectively filed opposition, repeat what is set forth in Artis's Notice of Removal: that Parrish's state law claims contain a substantial question of federal law because she has alleged that she took a leave of absence under the FMLA and, as a result, was subject to harassment and retaliation upon her return.

The Court is not persuaded by defendants' attempt to fashion a federal ques-

tion out of Parrish's state law claims. The FMLA grants employees the right to take a certain amount of time off if a "serious health condition . . . makes the employee unable to perform the functions of the position." 29 U.S.C. § 2612(a)(1)(D). The FMLA protects interference with, and retaliation for exercising, those rights. *See* 29 U.S.C. § 2615(a)(1) (It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."); *O'Donnell v. Passport Commc'ns, Inc.*, 561 Fed.Appx. 212, 216 (3d Cir.2014) (It is "unlawful for an employer to retaliate against an employee for invoking their FMLA rights."). Parrish was granted and exercised her leave rights under the FMLA. She is not explicitly asserting any of her rights under the FMLA were violated, and her state law claims neither raise, nor require resolution, of any FMLA issue.

Closely examining the core of defendants' argument, which is that Parrish's "purported state law claims contain a substantial embedded question of federal law under the FMLA," (D.E. 4 at 5), and looking closely at the factual allegations in the complaint, the Court must disagree.

■ Defendants' allegation that there is an embedded FMLA interference claim is based on one paragraph in the amended complaint, alleging that Parrish was harassed while on leave.[2] However, a fair reading of this paragraph indicates neither that Parrish seeks redress under the FMLA, nor that her references to the statute necessarily raise a question under the FMLA. Rather, her taking the leave constitutes necessary context, factually

backing up her claim that Artis retaliated against her after she reported his harassing behavior to the company's personnel department. (*See* Am. Compl. ¶ 25 (alleging violation of the NJLAD because defendants treated Parrish differently based on her objections to acts of discrimination by a supervisor).) Parrish alleges that she took leave under the FMLA, that her employer stopped her supervisor from asking her to return early or perform work while on leave, and that she returned to work before the claims she raises under state law here arose. (Am. Compl. ¶¶ 8, 10.) The claims Parrish brings are based on the happenings *after* she returned from FMLA leave, not on any alleged interference with her ability to exercise her rights under the FMLA. Applying the *Grable* test, whether her employer interfered with her FMLA leave is neither necessarily raised as part of her state law claims, nor actually disputed. *See Manning*, 772 F.3d at 163.

■ Defendants' argument that the amended complaint contains an embedded FMLA retaliation claim also fails. Such a claim requires that a plaintiff show that "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir.2012). In examining the amended complaint along these line, it is important to note that whether the factual allegations underpinning Parrish's state law discrimination claims align with the elements of a federal FMLA claim for retaliation is *not the test* for federal question jurisdiction. *See Manning*, 772 F.3d at 163 (articulating

---

2. "Mr. Artis called her constantly while she was out on leave and harassed her to return from her leave and/or to perform work while she was on her leave. Plaintiff contacted the personnel department to report that Mr. Artis

was harassing her while she was recuperating from her disability. Personnel instructed Mr. Artis to stop his harassing behavior." (Am. Compl. ¶ 10.)

four-prong *Grable* test). Defendants cannot force Parrish to bring a federal claim, even if she arguably has alleged the elements. The test for federal question jurisdiction is not whether a plaintiff has a federal claim; rather, a plaintiff must have " '(1) necessarily raised,' " a federal issue that is " '(2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.' " *Id.* (quoting *Gunn*, 133 S.Ct. at 1065). The amended complaint here does not suggest that the Court will be required to analyze any such federal issue based on Parrish's articulated causes of action, and so it does not raise a federal question.

■ Turning to the pleaded causes of action, the Court is unable to find any federal issue that would trigger a federal question. *See id.* For example, the first count alleges retaliation under the NJLAD, which requires that Parrish must show that (1) she engaged in activity protected by the NJLAD; "(2) her employer took an adverse employment action against her either after or contemporaneous with her protected activity; and (3) a causal connection exists between that adverse employment action and her protected activity." *Hargrave v. Cty. of Atlantic*, 262 F.Supp.2d 393, 423 (D.N.J.2003) (Brotman, J.) (citing *Craig v. Suburban Cablevision, Inc.*, 140 N.J. 623, 660 A.2d 505 (1995)).

These elements under New Jersey state law do not contain a question, or require construction, of federal law. *See Manning*, 772 F.3d at 163 ("For a federal issue to be necessarily raised [under prong 1], 'vindication of a right under state law [must] necessarily turn[ ] on some construction of federal law,' which typically requires "a determination of federal law as an essential element of the plaintiff's state law claim.") (quoting *Franchise Tax Bd. of State of Cal.*, 463 U.S. at 9, 103 S.Ct. 2841).

Likewise, Parrish's second count alleges that defendants treated her differently because of her alleged disability and therefore discriminated against her under the NJLAD. (*See* Am. Compl. ¶ 29.) To establish employment discrimination under the NJLAD, Parrish must show that she "(1) belongs to a protected class, (2) was performing in the position from which she was terminated, (3) nevertheless was fired, and (4) the employer sought someone to perform the same work after she left." *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 457–58, 867 A.2d 1133 (2005). Whether her hernia and subsequent infection qualify as a disability for purposes of the NJLAD, which defendants dispute, does not invoke any question about the FMLA.

■ The same is true of her third and fourth counts, which allege aiding and abettor liability under the NJLAD[3] and a violation of CEPA[4], respectively. None of

**3.** The elements of aider and abettor liability under the NJLAD are that defendant was "generally aware of his role as part of an overall illegal or tortious activity at the time he provide[d] the assistance; [and] ... [that] the defendant ... knowingly and substantially assist[ed] the principal violation." *Tarr v. Ciasulli*, 181 N.J. 70, 84, 853 A.2d 921 (2004).

**4.** For a CEPA violation, a plaintiff must make out a prima facie case of retaliatory discharge, which requires a showing

"(1) that he or she reasonably believed that his or her employer's conduct was violating

either a law or a rule or regulation promulgated pursuant to law; (2) that he or she performed whistle-blowing activity described in [CEPA]; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action."

*Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 92 (3d Cir.1999) (quoting *Kolb v. Burns*, 320 N.J.Super. 467, 476, 727 A.2d 525 (App.Div.1999)). The burden then shifts to the employer to " 'articulate some legitimate, nondiscriminatory reason' for its actions." *Id.* (quoting *Woodson v. Scott Paper Co.*, 109 F.3d

these claims requires construction of any federal law. *See MHA, LLC*, 629 Fed. Appx. at 412–13 (to necessarily raise a federal issue, an element of plaintiff's state law claim must require construction of federal law); *Manning*, 772 F.3d at 163 (same). Since plaintiff has not (1) necessarily raised a federal issue that is (2) actually disputed and (3) substantial, this case does not fall within the " 'slim category' of cases that satisfy the *Grable* test." *Manning*, 772 F.3d at 163 (prongs 1-3 of the *Grable* test) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006)).

The Court would be remiss if it did not comment on the danger of adopting defendants' position. If accepted, a federal court would be presiding over four specifically-pled, state-law claims arising out of remedial state statutes solely on the basis of supplemental jurisdiction—which in turn would be created by an interpretation of facts that underlie a solitary, potential, and un-asserted, federal FMLA claim.

It cannot be an infrequent occurrence that one asserting a state law employment claim may have taken FMLA leave. To find federal question jurisdiction on the basis of that constricts a wronged employee's ability to access state courts. As here, this would require federal adjudication of state law claims even if all instances of retaliation and discrimination took place after the FMLA leave was successfully taken and that chapter of the individual's employment history had closed. Although the FMLA provides potential recourse in some circumstances through a federal re-

taliation claim, this plaintiff should not have to forego her exercise of state law protections, in state court, on the basis of what is essentially a *post hoc, propter hoc* argument.[5]

New Jersey has an interest in regulating discriminatory practices within its borders. Moreover, the FMLA explicitly protects state-mandated leave benefits that are more generous than federal law requires. *See* 29 U.S.C. § 2652 ("Nothing in this Act ... shall be construed to diminish the obligation of any employer to comply with any collective bargaining agreement or any employment benefit plan that provides greater family or medical leave rights to employees than the rights established under this Act"). The FMLA recognizes and protects state law intricacies and was not intended to usurp state law or an individual's ability to choose to litigate a claim in state court. Indeed, the *Grable* test accounts for this in looking not to whether a potential federal claim exists, but rather to whether a substantial federal issue is *necessarily* raised and *actually disputed. See Gunn*, 133 S.Ct. at 1068. Basing federal jurisdiction on Parrish's exercise of her FMLA leave, and ferreting out whether a potential but un-asserted federal claim arises out of subsequent events, improperly diminishes her ability to elect to bring her state law claims in state court and "disrupt[s] the federal-state balance approved by Congress." *See id.*

## IV. Attorneys' Fees

██ Much of defendants' opposition is directed towards Parrish's argument that

---

913, 920 n. 2 (3d Cir.1997)). The plaintiff must then demonstrate "both that the reason [given by the employer] was false, and that [retaliation] was the real reason." *Id.* (internal quotations and citations omitted).

5. Further, the above scenario runs the risk of federalizing existing and future employment rights whenever an individual accesses leave

under the FMLA. This has the potential not only to circumvent state law complexity, but also to do violence to federal initiatives and chill the exercise of FMLA rights. If an employee is fearful of potential retaliation after taking FMLA leave, the knowledge that any and all claims will have to be in federal court—potentially an unfamiliar and daunting forum—may give that employee pause.

they and/or their counsel should be required to pay the $1,250 in attorneys' fees she incurred as a result of the removal. Defendants argue that they had a good faith, objectively reasonable basis for removal, precluding such an award under *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005).

 When a district court remands a case to state court, 28 U.S.C. § 1447(c) permits an award of "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." An award of attorneys' fees is within the court's discretion. *Stephens v. Gentilello*, 853 F.Supp.2d 462, 471 (D.N.J.2012) (Rodriguez, J.). While bad faith is not required for an award of attorneys' fees, a good faith basis for seeking removal prohibits such an award. *Costa v. Verizon N.J., Inc.*, 936 F.Supp.2d 455, 467–68 (D.N.J.2015) (Hillman, J.). "[T]he standard for awarding fees should turn on the reasonableness of the removal," and "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141, 126 S.Ct. 704.

Removal jurisprudence is a developing area, and the very recent Supreme Court decision in *Manning*, affirming the Third Circuit's reversal of the District Court's decision, illustrates this well. *Merrill Lynch Pierce Fenner & Smith, Inc. v. Manning*, — U.S. —, 136 S.Ct. 1562, 1567, 194 L.Ed.2d 671 (2016). Since *Martin*, the Third Circuit has not reviewed an award of attorneys' fees in a case referencing the FMLA that involved only state law claims. Parrish cites fee-award cases, but they are all distinguishable—several because they involve diversity jurisdiction and not the detailed inquiry required by the *Grable* test in ascertaining whether federal question jurisdiction will lie where

a complaint asserts only state law claims. *See, e.g., Ingemi v. Pelino & Lentz*, 866 F.Supp. 156 (D.N.J.1994) (Brotman, J.). At bottom, it does not appear that defendants failed to do research or that they misrepresented the complaint, *see, e.g., Eyal Lior v. Sit*, 913 F.Supp. 868, 878 n. 10 (D.N.J. 1996); *Twp. of Whitehall v. Allentown Auto Auction*, 966 F.Supp. 385, 386 (E.D.Pa.1997), and the Court declines to award fees against them.

### V. Conclusion

For the reasons stated above, the Court remands this case to New Jersey state court and denies Parrish's request for attorneys' fees.